UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PICTET FUNDS (EUROPE) S.A. and PICTET
OVERSEAS INC.,

                                    Plaintiffs,

            – against –                                    Civ. No.14-6854 (SAS)

EMERGING MANAGERS GROUP, L.P. and EMG
CAPITAL, LLC,

                                    Defendants.

## **DECLARATION OF Laurent Moser**

Laurent Moser, pursuant to 28 U.S.C. § 1746, declares the following:

1.      I am Head of Compliance at Pictet Funds (Europe) S.A. ("PFE") and I submit this Declaration in support of PFE's and Pictet Overseas Inc.'s Motion for a Preliminary and Permanent Injunction. As Head of Compliance, I have access to all books, records, archives and communications concerning PFE's business relationships. This Declaration is based on my own personal knowledge.

2.      PFE is a corporation organized under the laws of Luxembourg. Its principal place of business is in Luxembourg. PFE is not, and has never been, a member of the Financial Industry Regulatory Authority, Inc. ("FINRA").

3.      PFE is an affiliate of plaintiff Pictet Overseas Inc. It is wholly distinct and separate from Pictet Overseas Inc.

4.      On or about July 9, 2014, PFE received from FINRA a Statement of Claim dated May 29, 2014, attached hereto as Exhibit 1.

5.     The Statement of Claim contains a single claim for a supposed breach by PFE of the "Relationship Management Agreement" dated June 21, 2010 (the "Agreement") between PFE and Atlantic Financial Partners LLC ("Atlantic").   The claimants allege that they "performed admirably" under the Agreement, but that PFE breached the Agreement by terminating it without cause and with immediate effect.   The claimants allege that in terminating the Agreement, PFE breached Clause 8(a), which allegedly requires PFE to provide three months notice prior to termination.   The claimants further allege that clause 8(d) of the Agreement requires PFE to provide "remuneration for a period of 12 (twelve) months following the effective date of termination," but that PFE has failed to fulfill its obligations in accord with this provision as well. *See* Ex. 1, ¶¶ 26, 50-53.

6.     Neither Emerging Managers Group L.P. nor EMG Capital, LLC. (the claimants in the Statement of Claim and the defendants in this action), is a party to that Agreement; PFE and Atlantic are the only parties to the Agreement.   The Agreement was attached as Exhibit A to the Statement of Claim and is attached here as Exhibit 2.

7.     Under the Agreement, Atlantic was to provide PFE with sales and support services related to certain investment funds sold and managed by PFE, and PFE was to provide Atlantic with a fee and commission for its services.

8.     On April 30, 2014, PFE terminated the Agreement as of May 1, 2014 due to Atlantic's failure to perform its obligations under the Agreement in a satisfactory manner, thereby breaching Clauses 2.2 and 2.3 of the Agreement.   Among other things, Atlantic failed to meet performance and sales targets, thereby failing to provide the quality of services required by Clause 2.3 of the Agreement.

9.     Section 10 of the Agreement (entitled "Governing Law / Place of Jurisdiction") provides:

> This Agreement including **all matters related to its validity, construction, performance** and enforcement shall be governed by the laws of the [sic] Switzerland.  The Parties expressly agree that **Geneva shall be the exclusive place of jurisdiction**; provided however that, in the event of a dispute related solely to fees payable, then AFP shall have the right to initiate an arbitration action to be settled by binding and non-appealable arbitration administered by FINRA Dispute Resolution in New York, NY, in accordance with its securities arbitration rules then in force and judgment upon such award may be entered in any court of competent jurisdiction.  Should the above mentioned dispute be initiated by Pictet, the latter shall have the choice about the appointment of the institution administering the international arbitration.

(Emphasis added).

10.     The dispute described in the Statement of Claim concerns "performance" under the Agreement, and any dispute relating to the contracting parties' "performance" under the Agreement must be adjudicated, exclusively, in the courts of Geneva, Switzerland.

11.     Section 9 of the Agreement provides as follows:

> Any changes to this Agreement must be made in writing and be signed by the parties in order to be effective.

The Agreement was never modified to add Defendants Emerging Managers Group, L.P. or EMG Capital, LLC as parties.  Defendants appear to contend that they somehow are parties or assignees to the Agreement, but there is no signed writing effecting any such change or assignment in existence or indicating when it occurred.

12.     PFE does not have any agreement of any kind with either of the defendants, let alone an agreement to arbitrate.

13.     PFE does not consent to arbitrate the defendants' claims.

3

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:      Luxembourg, Luxembourg
            August 26, 2014

# EXHIBIT 1

**FINANCIAL INDUSTRY REGULATORY AUTHORITY**

| | |
|---|---|
| EMERGING MANAGERS GROUP, L.P. and EMG CAPITAL, LLC, | FINRA No. 14-01685 |
| Claimants, | |
| v. | **STATEMENT OF CLAIMS AND DEMAND FOR ARBITRATION** |
| PICTET FUNDS (EUROPE) S.A., PICTET ASSET MANAGEMENT S.A., PICTET OVERSEAS INC., | |
| Respondents. | |

Claimants Emerging Managers Group, L.P. and EMG Capital, LLC (collectively, "Claimants" or "EMG"), through their attorneys Mandel Bhandari LLP, for their Statement of Claims against Respondents Pictet Funds (Europe) S.A., Pictet Asset Management S.A., and Pictet Overseas Inc. (collectively, "Respondents" or "Pictet"), hereby state as follows:

### PRELIMINARY STATEMENT

1.      This is a fee dispute between Pictet, who are the managers of a group of investment funds based in Europe, and EMG, which is the firm Pictet retained to promote those funds in the Americas.

2.      Pictet and EMG were parties to a written Relationship Management Agreement (the "Agreement").  A copy of the Agreement is attached to this Statement of Claim as Exhibit A.

3.      EMG performed admirably under the Agreement, but in April 2014 Pictet chose to terminate.

1

4.     The Agreement provided Pictet a simple mechanism for terminating its relationship with EMG, but Pictet decided to ignore that mechanism.  The Agreement required Pictet to provide EMG with three months written notice of the termination.  Pictet ignored this and provided EMG less than twenty-four hours notice.

5.     The Agreement required Pictet to continue to pay EMG fees for a period of twelve months after the effective date of the termination.  Pictet has ignored this, too, and is refusing to pay EMG its hard-earned fees.

6.     EMG brings this arbitration to collect the fees it is entitled to under its written Agreement with Pictet.

## THE PARTIES

7.     Claimant Emerging Managers Group, L.P. ("EMG LP"), a Delaware Limited Partnership with offices at 75 Rockefeller Plaza, 15th Floor, New York, New York 10019, is a Registered Investment Advisor with the Securities and Exchange Commission, CRD #153442, SEC #801-72439.

8.     Claimant EMG Capital, LLC ("EMG Capital" and, together with EMG LP, "EMG"), a Florida Limited Liability Corporation wholly owned by EMG LP, with offices at 1450 Brickell Avenue, 30th Floor, Suite 3090, Miami, Florida 33131,  is a FINRA-registered broker dealer, CRD #159054,  SEC #8-68960.

9.     Upon information and belief, Respondent Pictet Funds (Europe) S.A. is an entity existing under the laws of Luxembourg, with offices at 15, avenue J.F. Kennedy, L-1855 Luxembourg.  Upon information and belief, Respondent Pictet Funds (Europe) S.A. is a member of Pictet Asset Management, an asset management group based in Geneva, Switzerland.

10.   Upon information and belief, Respondent Pictet Asset Management S.A. is an entity existing under the laws of Switzerland, with offices at 60 Route des Acacias, Geneva, Switzerland, 1211-73.  Pictet Asset Management S.A. is a FINRA-registered firm, CRD #140074, SEC #801-66760.

11.   Upon information and belief, Respondent Pictet Overseas Inc. is an entity existing under the laws of Canada, with offices at 1000 De La Guachetiere West, Suite 3100, Montreal, OC, Candada, H3B4W5.  Pictet Overseas Inc. is a FINRA-registered firm:  CRD# 36500; SEC# 8-47285.

## DEMAND FOR ARBITRATION

12.   This fee dispute is subject to mandatory arbitration by FINRA pursuant to FINRA Rule 13200(a).

13.   The Relationship Management Agreement (the "Agreement"), attached hereto as Exhibit A, provides that "in the event of a dispute related solely to fees payable, then [EMG] shall have the right to initiate an arbitration action to be settled by binding and non-appealable arbitration administered by FINRA Dispute Resolution in New York, NY." See Exhibit A, Clause 10.

14.   Notice of this Statement of Claim and Demand for Arbitration is being served on May 29, 2014, by Claimants Emerging Managers Group, L.P. and EMG Capital, LLC (collectively, "Claimants" or "EMG"), located at 75 Rockefeller Plaza, 15th Floor, New York, New York 10019, through their agent Mandel Bhandari LLP, located at 11 Broadway, Suite 615, New York, New York 10004.

3

15.     Unless the parties served apply to stay the arbitration within twenty days after service, the parties shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time.

### VENUE

16.     This dispute should be arbitrated in New York City pursuant to FINRA Rule 13213(a).

### ALLEGATIONS

**The Relationship Management Agreement**

17.     On or about June 10 and 11, 2010, Pictet entered into a written "Relationship Management Agreement" with Atlantic Financial Partners LLC (the "Agreement").  A copy of the Agreement is attached to this Statement of Claim as Exhibit A.

18.     EMG is the successor to Atlantic Financial Partners LLC.  On or about February 3, 2012, EMG assumed all of Atlantic Financial Partners LLC's rights and responsibilities under the Agreement.  Prior to such assumption of rights and responsibilities, EMG received Pictet's consent to do so.

19.     Attached as Exhibit B is a Termination Letter issued by Pictet stating that, "the Agreement was taken over by Emerging Managers Group LLC (EMG)."

20.     Under the Agreement, EMG served as Pictet's sales and support agent in the Americas.  Specifically, Pictet wished to increase the volume of investment in its funds by both institutional and private investors in the Americas, and, to that end, wanted to sell shares in its funds via Morgan Stanley's Wealth Management Group (formerly Smith Barney), Merrill Lynch's Global Private Client Group and other distributors (notably UBS International) serving non-US persons through offices in the U.S. (the "Distributors").  Under the Agreement, EMG

4

would serve as Pictet's principal contact and agent in dealings with the Distributors, assisting Pictet with the promotion and marketing of Pictet funds with the Distributors.

21.     The full terms of EMG's duties and obligations under the Agreement are described in Clause 2 of the Agreement.  See Exhibit A, Clause 2.

22.     EMG's compensation under the Agreement was structured so as to give EMG a strong incentive to promote and market Pictet's funds in the Americas.  In addition to an initial "Basis Fee" of 30,000 Swiss Francs, EMG was to receive a quarterly "Maintenance Commission."  The Maintenance Commission was equal to a percentage of the value of all shares in Pictet funds held in the names of the Distributors.  The more shares in Pictet funds that investors bought through the Distributors, or the higher the value of those shares climbed, the more EMG would receive in Maintenance Commissions.

23.     The full terms of EMG's compensation under the Agreement are described in Clause 5 and Appendix I of the Agreement.  See Exhibit A, Clause 5 & App. I.

24.     Although dated June 10 and June 11, 2010, the Agreement was made retroactive to February 1, 2010.  See Exhibit A, Clause 8(a).

25.     The Agreement was to remain in force for an indefinite period of time, but provides that "Any party may terminate this Agreement by the giving of no less than **three months written notice** to the other".  See Exhibit A, Clause 8(a) (emphasis in original).

26.     The Agreement also provides that "In the event of termination of this Agreement by Pictet which is not due to [EMG]'s material breach of this Agreement, Pictet shall continue to pay the remuneration for a period of 12 (twelve) months following the effective date of termination, based on the assets still held by the Distributors during that period."  See Exhibit A, Clause 8(d).

27.     The Agreement also provides that "The Agreement may be terminated by any party with **immediate effect** as follows: [ ] if one of the parties fails to observe or perform the obligations set forth in clauses 2.2, 2.3 and 5 of this Agreement."   <u>See</u> Exhibit A, Clause 8(b)(ii) (emphasis in original).

28.     The Agreement provides that all amendments must be in writing and signed by the Parties.  <u>See</u> Exhibit A, Clause 9.  The Agreement was never amended to require EMG to meet any specific sales targets.

<u>**EMG's Admirable Performance Under The Agreement**</u>

29.     EMG diligently performed all of its obligations under the Agreement, including under Clauses 2.2 and 2.3.

30.     EMG conducted many meetings with Distributors and their financial advisors for Pictet in the Americas and briefed Pictet on its efforts during bi-monthly sales meetings between Pictet's sales personnel and EMG sales personnel.  EMG regularly set up meetings for Pictet's portfolio managers and product specialists visiting from overseas.

31.     EMG, at the behest of Pictet, guided and directed the addition of Pictet funds on the offshore platforms of UBS International and RBC Wealth Management in the U.S.; UBS International has been, and should continue to be, a substantial contributor to the sales of Pictet funds.

32.     EMG encouraged the Distributors to transition from having their assets being highly concentrated in one Pictet fund—the Pictet Emerging Local Currency Debt Fund (a flagship fund for Pictet as a whole)—into other funds.  Because the Emerging Local Currency Debt Fund performed poorly, not the least because the entire asset class was under pressure, this effort—particularly with the financial advisors of Merrill Lynch—ensured that the value of the assets that the Distributors maintained with Pictet was higher than it would have been had the

Distributors kept their funds concentrated in the Emerging Local Currency Debt Fund. Furthermore, by maintaining Pictet's profile with the Distributors, EMG helped ensure that when market conditions improve, Pictet will again be in a position to regain momentum for its flagship fund. Because the Distributors had more assets under management with Pictet than would otherwise have been the case, Pictet generated, and should generate when market conditions improve for its flagship product, more revenues from the Distributors.

33.    EMG has been in close contact with Pictet's business staff. Right up to the first quarter of 2014, sales meetings were held bi-monthly between all of EMG's sales staff and Pictet's sales personnel. Regularly scheduled agenda items included sales initiatives by EMG's sales personnel on behalf of Pictet funds, and the scheduling of meetings for Pictet's visiting portfolio managers and product specialists (all of whom were based overseas). EMG also arranged for Pictet's participation at conferences held by the Distributors.

34.    In the first quarter of 2014, EMG earned a Maintenance Commission of $62,000, or roughly $20,666 per month. This reflected a daily average of roughly $197 million in Pictet funds held by the Distributors in the first quarter of 2014.

35.    Upon information and belief, the number of shares in Pictet funds held in the names of the Distributors will increase between April 30, 2014 and July 31, 2015.

36.    Upon information and belief, the value of shares in Pictet funds will increase between April 30, 2014 and July 31, 2015.

37.    Upon information and belief, the Maintenance Commission that would be earned during the fifteen months from April 30, 2014 to July 31, 2015, based upon shares on the Pictet funds held in the name of the Distributors during those fifteen months, would be not less than $310,000 (that is to say, not less than $20,666 per month, times 15 months).

7

**Pictet Terminates The Agreement**

38.    On or about April 30, 2014, Pictet delivered a letter to EMG in which Pictet purported to terminate the Agreement effective May 1, 2014.

39.    Pictet asserted that EMG "failed to provide Pictet with the quality of service due under the Agreement." It stated during 2012 and 2013, EMG "didn't deliver the expected performance and the Sales Target that had been given by Pictet and agreed by [EMG] has not been reached, by far."

40.    However, as noted, the Agreement contains no specific sales targets for EMG to meet.

41.    Upon information and belief, Pictet terminated the Agreement not because EMG failed to perform, but because Pictet's funds have been so well positioned with the Distributors and their individual financial advisors (many of whom had strong, long-standing relationships with EMG sales personnel even preceding the Agreement), that Pictet feels it can perform all marketing of its funds in the Americas through other means.

42.    Upon information and belief, Pictet only asserts that EMG has breached the contract in order to avoid paying the fees it is obliged to pay EMG under Clause 8 of the Agreement.

**FIRST CLAIM**
**(BREACH OF CONTRACT)**

43.    The Relationship Management Agreement (the "Agreement") is a valid and enforceable contract.

44.    EMG is the successor of Atlantic Financial Partners LLC under the Agreement.

45.    EMG has performed all of its obligations under the Agreement.

46.     On or about April 30, 2014, Pictet purported to terminate the Agreement pursuant to Clause 8(b)(ii).

47.     Because EMG has performed all of its obligations under the Agreement, Pictet may not terminate the Agreement pursuant to Clause 8(b)(ii).

48.     Pictet's purported termination of the Agreement pursuant to Clause 8(b)(ii) constitutes a breach of the Agreement by Pictet.

49.     Pursuant to Clause 8(a), Pictet must provide EMG with three months written notice of a termination.  Three months from April 30, 2014 is July 31, 2014.

50.     Pursuant to Clause 8(d), because Pictet is terminating for reasons other than EMG's material breach of the Agreement, Pictet must pay EMG the remuneration owing under Section 5 and Appendix I "for a period of 12 (twelve) months following the effective date of termination." Twelve months following the effective date of termination in July 31, 2015.

51.     The Maintenance Commission that would be earned during the fifteen months from April 30, 2014 to July 31, 2015, based upon shares on the Pictet funds held in the name of the Distributors during those fifteen months, is an amount to be determined at arbitration, but not less than $310,000.

52.     Further, as of the date of this Statement of Claim, EMG has not been paid either (i) the Maintenance Commission earned by EMG for the month of April 2014, which is not less than $20,666.67, or (ii) the T&E expense reimbursement for April 2014, which is $8,333.33 (or one-third the quarterly rate of $25,000 per quarter.)

53.     As a result of Pictet's actions, EMG has been damaged in an amount to be determined at arbitration, but not less than $339,000.

*          *          *

9

**WHEREFORE,** Claimant Emerging Managers Group, L.P. respectfully requests that the panel enter an award:

a. Granting it compensatory damages in an amount to be determined at arbitration, not less than $339,000;

b. Granting it interest thereon;

c. Granting it costs and expenses in this arbitration;

d. Granting it attorneys' fees;

e. Granting it punitive damages; and

f. Awarding it such other relief as the panel deems just and proper.

Dated:  New York, New York         By:
       May 29, 2014

Rishi Bhandari
Mandel Bhandari LLP
11 Broadway, Suite 615
New York, New York 10004
Tel:  (212) 269-5600
Fax: (646) 964-6667
rb@mandelbhandari.com

*Attorneys for Claimants Emerging Managers*
*Group, L.P. and EMG Capital, LLC*

10

# Exhibit A

# RELATIONSHIP MANAGEMENT AGREEMENT

between

**Atlantic Financial Partners LLC,**
with its registered office in 420 Lexington Avenue, Suite 2225 New York, NY 10170-2200
(hereafter, the **"AFP"**)

and

**Pictet Funds (Europe) S.A.**
with its registered office at 3 Boulevard Royal, L-2449 Luxembourg
(hereafter "**Pictet**")

for the purpose of the present Agreement (the **"Agreement"**) shall hereafter be referred to
as the **"Parties"**.

---

**Preamble:**

* Pictet is a management company of the Pictet Group, created under Chapter 13 of the Luxembourg Law of 20 December 2002 on undertakings for collective investments. In this role, it is in charge of the management and distribution of the investment funds of the Pictet Group created under the laws of Luxembourg.

* AFP is an independent firm specialised in the field of business development for financial services and investment products worldwide and has excellent contacts with various investment fund distributors and / or networks of investment fund distributors.

* It is the objective of Pictet to substantially increase the investment volume in their Luxembourg-based investment funds (the "**Pictet Funds**") and develop new markets by placing shares of the Pictet Funds (the "**Shares**") with investors of any kind (institutional and private) – who are not "US Persons"[1] - over such distributors and networks. Pictet, to that effect, aims to call upon the services of AFP, which declares its willingness and capacity to act as a sales and support agent in the Americas, as defined below, in order to reach the aforementioned objective.

In the first phase, placements of Shares shall be envisaged over *Smith Barney's* Global Wealth Management Group and *Merrill Lynch's* Global Private Client Group network as well as other similar institutions exclusively in the Americas. *Smith Barney's* Global Wealth Management Group and *Merrill Lynch's* Global Private Client Group network as well as other broker-dealer platforms for the purpose of this Agreement shall be referred to as the "**Distributors**". The America's shall be defined by the location of offices of the Distributors and shall be based in North, Central or South America.

**The Parties hereby acknowledge and agree on the following:**

---

[1] « US Person » means a person that (a) qualifies as (i) a « US Person » as defined under Regulation S promulgated under the US Securities Act of 1933 and (ii) a « US Person » as defined under the US Internal Revenue Code of 1986 and the Treasury Regulations promulgated thereunder.

1.    *Basis* of the Agreement

The purpose and sub*stance of this* Agreement is to define and establish the legal relationships between AFP and Pictet, relating to the se*rvices to be re*ndered by AFP. All Appendices to thi*s Agreement as* well as its Preamble constitute an integral part of this Agreement.

2.    Duties and obligations of AFP

2.1   General Scope of Services

Taking into account the objective of Pictet as defined in the Preamble as well as Pictet's fundamental business objectives and interest, AFP shall be available and act as contact for Pictet (or for the entities or persons Pictet might designate) and as sales and support agent between Pictet and the Distributors.

It is understood and agreed between the Parties that AFP – in its quality as independent agent - shall have no right to sign any distribution agreement with the Distributors on behalf of Pictet.

2.2   Investment Acquisition

AFP shall actively establish contact with the Distributors and shall introduce and promote the Pictet Funds to the Distributors in order to persuade the Distributors to make investments.

AFP shall furthermore continue to provide distribution services to the Distributors in relation to investments introduced by AFP.

To that end, AFP shall undertake such activities as it deems appropriate, however, shall previously consult Pictet (or the entities or persons designated by Pictet). Namely, AFP shall render the following services in connection with its duties regarding the distribution of Pictet Funds:
* organise product presentations in the markets covered by this Agreement (Appendix II) (the "Markets");
* organise and support product trainings in the Markets;
* be available to accompany Pictet staff for site visits in the Markets;
* act, in general, as a sales and support agent between Pictet and the  Distributors and namely receive, forward and support dealing with enquiries made by the  Distributors and/or their clients.

AFP shall obtain consent by Pictet (or by the entities or persons designated by Pictet) prior to producing and using any materials or documentation of its own to portray AFP and/or Pictet Funds and/or any other company of Pictet, therein being included any use of the name and/or logotype "Pictet". However, materials and documentation placed at AFP's disposal by entities of the Pictet Group for marketing and sales purposes may, within the framework of applicable local legislation, be freely used by AFP.

AFP and AFP associates or staff shall not present themselves as employees of Pictet or of any other company of Pictet and AFP agrees not to undertake any actions that might lead the Distributors and/or any client of the Distributors and/or any third party to the opposite conclusion. In particular, AFP is not authorized to enter into any commitments in the name or for account of Pictet or any other company of Pictet, nor to legally bind Pictet or any other company of Pictet Group in any way, nor to provide any assurances regarding Pictet or any

2

other company of Pictet Group and/or regarding the services rendered or products offered by any such subject.

**2.3     Supporting Services**

AFP shall proactively render such supporting services as are deemed necessary and useful by Pictet and/or by the Distributors in order to provide for an accurate and efficient business development in the Markets.

As a general rule, AFP shall keep itself informed and up to date on any issues that might have an impact on the position of Pictet in the Markets and shall analyse such issues and submit proposals for action plans to Pictet on how to cope with such issues. It is understood that, thereby, AFP shall follow a pro-active approach.

**3.     Rights and Obligations of Pictet**

Pictet is entitled to establish or terminate directly or indirectly contractual relationships with the Distributors in its own name and on its own account and as it deems appropriate, according to Pictet's internal due diligence procedures.

Pictet (or the entities or persons designated by Pictet) shall support AFP in its activities by keeping AFP updated of all relevant facts and by ensuring that AFP receives the necessary material containing information about Pictet and Pictet Funds.

Pictet is entitled, where deemed necessary, to issue directives to AFP with regard to product sales, product offering, promotions and pricing.

**4.     Information Exchange**

Further to the duties of mutually keeping the other Party updated on relevant facts, as described in points 2.3 and 3 of this Agreement, the Parties agree on establishing a periodical information exchange via telephone conference.

**5.     Remuneration**

Pictet shall pay to AFP a remuneration for the services rendered under the present Agreement which shall be governed by **Appendix I** hereto, and payment shall be made to AFP's broker/dealer of record, Silver Leaf Partners, LLC, for further credit to AFP under and pursuant to the terms of this Agreement.

**6.     Confidentiality**

AFP agrees to observe strict secrecy with respect to all information and documents that belong to the sphere of business secrecy (and in particular with regard to all information and documents with relating to any Pictet Funds and their management company, any kind of commission or other payments made, or any other commercial conditions regulated, under this Agreement) that AFP learns in the course of its activity under this Agreement.

**7.     Care, Allegiance and Liability**

AFP undertakes to carry out its duties and obligations to the best of its ability and

3

conscience, with an industry standard degree of care and at all times in full compliance with
- the legal and regulatory provisions applicable in each country of the Markets and
- the fund documentation, such as the Articles of Association and Prospectus of Pictet as valid from time to time.

AFP shall carry out any activities under the present Agreement taking into account and safeguarding at all times the interests and concerns of Pictet and declares that it will abstain from practises like 'commercial arbitrage' and other practises that result in playing off the interests and concerns of Pictet against its own or any third party's interests and concerns.

AFP shall indemnify Pictet (or the entities or persons Pictet might have designated for the purposes of this Agreement) against any damages, losses or other liabilities resulting from AFP's wilful or grossly negligent breach of its legal or contractual duties and obligations or the non-fulfilment of such.

Pictet shall indemnify AFP (or the entities or persons AFP might have designated for the purposes of this Agreement with the approval of Pictet) against any damages, losses or other liabilities resulting from Pictet's wilful or grossly negligent breach of its legal or contractual duties and obligations or the non-fulfilment of such.

## 8.    Duration and Termination

a) This Agreement enters into force with retroactive effect on February 1st, 2010 and shall remain in force for an indefinite period of time.  Any party may terminate this Agreement by the giving of no less than **three months written notice** to the other

b) This Agreement may be terminated by any party with **immediate effect** as follows:

   (i)   if, owing to political, military or other serious events (other than those of temporary nature, such as the imposition of exchange controls, significant changes in the legal or fiscal environment or sale of the Funds business) it becomes impossible or impracticable for one of the parties to comply with the terms of this Agreement and if that party cannot reasonably be expected to respect the usual period of notice;

   (ii)  if one of the parties fails to observe or perform the obligations set forth in clauses 2.2, 2.3 and 5 of this Agreement; or

   (iii) if any of the parties enters into liquidation or ceases its activities following a shareholder resolution (other than a voluntary liquidation for the purposing of restructuring or merging) or has an administrative receiver or liquidator appointed or has a petition filed with a Court for the designation of an administrative receiver or a similar injunction or if a party ceases or threatens to cease to carry on substantially all of its business or its financial products distribution activity.

c) In the case of termination of this Agreement by Pictet due to AFP having breached any of its material obligations under this Agreement or otherwise materially jeopardizes the interests of Pictet, the latter shall be entitled to retain any earned but unpaid commissions.

d) In the event of termination of this Agreement by Pictet which is not due to AFP's material breach of this Agreement, Pictet shall continue to pay the remuneration for a period of 12 (twelve) months following the effective date of termination, based on the assets still held by the Distributors during that period.

4

**9.     Amendments to the Agreement**

Any changes to this Agreement must be made in writing and be signed by the Parties in order to be effective.

**10.     Governing Law / Place of Jurisdiction**

This Agreement including all matters related to its validity, construction, performance and enforcement shall be governed by the laws of the Switzerland. The Parties expressly agree that Geneva shall be the exclusive place of jurisdiction; provided however that, in the event of a dispute related solely to fees payable, then AFP shall have the right to initiate an arbitration action to be settled by binding and non-appealable arbitration administered by FINRA Dispute Resolution in New York, NY, in accordance with its securities arbitration rules then in force, and judgment upon such award may be entered in any court of competent jurisdiction.
Should the above mentioned dispute be initiated by Pictet, the latter shall have the choice about the appointment of the institution administering the international arbitration.

Luxembourg
———Geneva, the _11.06_     2010

Pictet Funds (Europa) SA

New York, the _21.06_     2010

ATLANTIC FINANCIAL PARTNERS LLC

Craig Morong

Appendices:
- Appendix I:      Remuneration to AFP
- Appendix II:     Markets, Distributors and Investors encompassed by this Agreement

Appendix I:

## I. Remuneration on volume introduced by AFP

A Basis Fee of 30'000 CHF shall be paid to AFP.

## II. Maintenance Commission

On top of the Basis Fee, Pictet shall pay to AFP a Maintenance Commission based on the volume introduced by AFP for the following funds and fee schedule .

For Funds Sold to Merrill Lynch:

| Fund name | Corresponding Merrill Lynch's Share Class | AFP Fee |
|---|---|---|
| **Emerging Markets - Equity** | | |
| Pictet-Emerging Markets-P Cap | A | 0.15% |
| Pictet-Emerging Markets-R | C | 0.25% |
| Pictet-Eastern Europe-P Cap | A | 0.15% |
| Pictet-Eastern Europe-R | C | 0.25% |
| Pictet-Asian Equities (Ex Japan)-P Cap | A | 0.15% |
| Pictet-Asian Equities (Ex Japan)- R | C | 0.25% |
| Pictet-Indian Equities-P Cap | A | 0.15% |
| Pictet-Indian Equities-R | C | 0.25% |
| Pictet-Greater China-P Cap | A | 0.15% |
| Pictet-Greater China-R | C | 0.25% |
| Pictet-Middle East and North Africa-P Cap | A | 0.15% |
| Pictet-Middle East and North Africa-R | C | 0.25% |
| Pictet-Russian Equities-P Cap | A | 0.15% |
| Pictet-Russian Equities-R | C | 0.25% |
| **Theme** | | |
| Pictet-Agriculture-P Cap | A | 0.15% |
| Pictet-Agriculture-R | C | 0.25% |
| Pictet-Biotech-P Cap | A | 0.15% |
| Pictet-Biotech-R | C | 0.25% |
| Pictet-Clean Energy-P Cap | A | 0.15% |
| Pictet-Clean Energy-R | C | 0.25% |
| Pictet-Digital Communication-P Cap | A | 0.15% |
| Pictet-Digital Communication-R | C | 0.25% |
| Pictet-Generics-P Cap | A | 0.15% |
| Pictet-Generics-R | C | 0.25% |
| Pictet-Global Megatrend Selection-P Cap | A | 0.15% |
| Pictet-Global Megatrend Selection-R | C | 0.25% |
| Pictet-Premium Brands-P Cap | A | 0.15% |
| Pictet-Premium Brands-R | C | 0.25% |
| Pictet-Security-P Cap | A | 0.15% |
| Pictet-Security-R | C | 0.25% |
| Pictet-Timber-P Cap | A | 0.15% |
| Pictet-Timber-R | C | 0.25% |
| Pictet-Water-P Cap | A | 0.15% |
| Pictet-Water-R | C | 0.25% |

6

**For Funds Sold to Smith Barney:**

| Fund name | Corresponding MSSB's Share Class | AFP Fee |
|---|---|---|
| **Emerging Markets - Equity** | | |
| Pictet-Emerging Markets-P Cap | A | 0.15% |
| Pictet-Emerging Markets-R | C | 0.25% |
| Pictet-Eastern Europe-P Cap | A | 0.15% |
| Pictet-Eastern Europe-R | C | 0.25% |
| Pictet-Asian Equities (Ex Japan)-P Cap | A | 0.15% |
| Pictet-Asian Equities (Ex Japan)-R | C | 0.25% |
| Pictet-Indian Equities-P Cap | A | 0.15% |
| Pictet-Indian Equities-R | C | 0.25% |
| Pictet-Greater China-P Cap | A | 0.15% |
| Pictet-Greater China-R | C | 0.25% |
| Pictet-Middle East and North Africa-P Cap | A | 0.15% |
| Pictet-Middle East and North Africa-R | C | 0.25% |
| Pictet-Russian Equities-P Cap | A | 0.15% |
| Pictet-Russian Equities-R | C | 0.25% |
| **Theme** | | |
| Pictet-Agriculture-P Cap | A | 0.15% |
| Pictet-Agriculture-R | C | 0.25% |
| Pictet-Biotech-P Cap | A | 0.15% |
| Pictet-Biotech-R | C | 0.25% |
| Pictet-Clean Energy-P Cap | A | 0.15% |
| Pictet-Clean Energy-R | C | 0.25% |
| Pictet-Digital Communication-P Cap | A | 0.15% |
| Pictet-Digital Communication-R | C | 0.25% |
| Pictet-Generics-P Cap | A | 0.15% |
| Pictet-Generics-R | C | 0.25% |
| Pictet-Global Megatrend Selection-P Cap | A | 0.15% |
| Pictet-Global Megatrend Selection-R | C | 0.25% |
| Pictet-Premium Brands-P Cap | A | 0.15% |
| Pictet-Premium Brands-R | C | 0.25% |
| Pictet-Security-P Cap | A | 0.15% |
| Pictet-Security-R | C | 0.25% |
| Pictet-Timber-P Cap | A | 0.15% |
| Pictet-Timber-R | C | 0.25% |
| Pictet-Water-P Cap | A | 0.15% |
| Pictet-Water-R | C | 0.25% |

CALCULATION OF THE MAINTENANCE COMMISSION

As to Merrill Lynch's calculation

The commission shall be calculated as a percentage of the Management Fee effectively charged to each compartment of the Pictet Funds, on the basis of the total volume of Shares that are carried in the name of the Distributor on the books of the SICAV's Registrar. AFP acknowledges that only those Shares that figure in the SICAV's books in the proper name of the Distributor shall be included in the calculation of the commission.

The commission shall be calculated quarterly based on the following formula :

Number of Shares x Net Asset Value x % Management Fee x % Maintenance Commission

7

```
--------------------------------------------------------------------------------
                    365 (or 366 for leap years)
```

**As to Morgan Stanley Smith Barney's calculation :**

The Maintenance Commission shall be calculated by Pictet based on the following formula :

1) Month-end AUM / Month-end NAV = Number of month-end shares
2) (Month-end shares + previous month-end shares) / 2 months = Total average of shares *(to be applied for the whole month)*

3)         Total average shares * daily NAV * % management fee * % maintenance commission
```
--------------------------------------------------------------------------------
                    365 (366 for leap years)
```

The Maintenance Commission due to Morgan Stanley Smith Barney shall be calculated based on the positions held on the Sicav's accounts indicated from time to time by AFP and/or Morgan Stanley Smith Barney to Pictet.

The amount of the above-mentioned Maintenance Commission shall be calculated quarterly (end-March, end-June, end-September and end-December) on the basis of a daily evaluation of the number of Shares held by each Distributor with an entity of the Pictet Group or a clearing institution.

For Shares held in custody at clearing institutions which do not provide daily positions or deposited at a third-party bank, the positions held in each Distributor's name at the end of each month will be taken into account in order to establish an average for the calculation of the Maintenance Commission. In any event, the valuation of the Shares shall be made daily.

Payments shall be made on the last business day of the month following the end of the quarter at the latest. The quarterly payment shall be made only if it amounts to or exceeds USD/EUR 100. Any payment less than USD/EUR 100 shall not be carried over to the next quarter.

For the time being no VAT is due with regard to the Maintenance Commission. Should the Maintenance Commission become liable of such a tax in the future, the Parties agree to renegotiate the terms of this Agreement.

The Maintenance Commission shall be paid on the following bank account :

| | |
|---|---|
| Bank : TD Bank | City : New York, NY |
| SWIFT : CBNAUS33 | Account Number : 791 536 1153 |
| ABA : 026013673 | FBO: Silver Leaf Partners, LLC |
| Contacts | MR. Kevin Meehan<br>Tel : 516-902-8974<br>Fax : 212-202-7534<br>e-mail : kmeehan@silverleafpartners.com |

8

Luxembarig

~~Geneva,~~ the _11 . 06_ 2010

Pictet Funds ( Europe ) S.A.

New York, the _10 June_ 2010

ATLANTIC FINANCIAL PARTNERS LLC

Craig Morong

Appendix II:

**Markets, Distributors and Investors encompassed by the Agreement**

a)  **Distributors**                     b) **Markets:**

| Merrill Lynch | Americas (North, Central and South America) |
|---|---|
| Morgan Stanley Smith Barney | Americas (North, Central and South America) |

c) **Investors**

| Merrill Lynch | US Offshore / Non US Persons as defined in the Preamble |
|---|---|
| Morgan Stanley Smith Barney | US Offshore / Non US Persons as defined in the Preamble |

\*\*\*

Luxembourg

~~Geneva,~~ the _11·06_   2010

Pictet Funds (Europe) SA

New York, the _10, June_   2010

ATLANTIC FINANCIAL PARTNERS LLC

Craig Morong

10

# Exhibit B

PICTET ASSET MANAGEMENT

**PICTET**
1805

Pictet Funds (Europe) S.A.
15, avenue J. F. Kennedy
L-1855 Luxembourg
B.P. 687
L-2016 Luxembourg
TEL +352 46 71 71-1
FAX +352 46 71 71 75 97

www.pictet.com
www.pictetfunds.com

30 April 2014

BY DHL
Atlantic Financial Partners LLC
Craig S. Morong
75, Rockefeller Plaza, 15th Floor
New York, NY 10019
USA

BY DHL
EMG Capital LLC
Karan Trehan
75, Rockefeller Plaza, 15th Floor
New York, NY 10019
USA

Sirs,

**Subject: Termination of your agreement with Pictet Funds (Europe) SA**

We refer to the agreement signed on 10/11 June, 2010 between Pictet Funds (Europe) SA
(Pictet) and Atlantic Financial Partners LLC (AFP), as amended from time to time
(hereafter the "Agreement"). As the case may be we assume that the Agreement was taken
over by Emerging Managers Group LLC (EMG).

According to the terms of the Agreement, AFP/EMG have been appointed by Pictet to act
as a sales and support agent for the Pictet funds in the Americas and, to this effect, to
promote the funds to Distributors in order to increase the volume of the investments by
non-US Investors.

Today, it must be noted that AFP/EMG have failed to provide Pictet with the quality of
service due under the Agreement. During the last two years (2012 and 2013), AFP/EMG
didn't deliver the expected performance and the Sales Target that had been given by Pictet
and agreed by AFP/EMG has not been reached, by far.

In light of the above, Pictet notes that AFP/EMG have failed to fulfil their contractual
obligations. Consequently, according to Clause 8, b (ii), we shall terminate the Agreement.
This termination shall take effect on May 1st, 2014.

Yours Sincerely,

Pictet Funds (Europe) SA

# EXHIBIT 2

# RELATIONSHIP MANAGEMENT AGREEMENT

between

**Atlantic Financial Partners LLC,**
with its registered office in 420 Lexington Avenue, Suite 2225 New York, NY 10170-2200
(hereafter, the "AFP")

and

**Pictet Funds (Europe) S.A.**
with its registered office at 3 Boulevard Royal, L-2449 Luxembourg
(hereafter "Pictet")

for the purpose of the present Agreement (the **"Agreement"**) shall hereafter be referred to as the **"Parties"**.

---------------------------------------------------------------------------------------------------

**Preamble:**

- Pictet is a management company of the Pictet Group, created under Chapter 13 of the Luxembourg Law of 20 December 2002 on undertakings for collective investments. In this role, it is in charge of the management and distribution of the investment funds of the Pictet Group created under the laws of Luxembourg.

- AFP is an independent firm specialised in the field of business development for financial services and investment products worldwide and has excellent contacts with various investment fund distributors and / or networks of investment fund distributors.

- It is the objective of Pictet to substantially increase the investment volume in their Luxembourg-based investment funds (the "Pictet Funds") and develop new markets by placing shares of the Pictet Funds (the "Shares") with investors of any kind (institutional and private) – who are not "US Persons"[1] - over such distributors and networks. Pictet, to that effect, aims to call upon the services of AFP, which declares its willingness and capacity to act as a sales and support agent in the Americas, as defined below, in order to reach the aforementioned objective.

In the first phase, placements of Shares shall be envisaged over *Smith Barney's* Global Wealth Management Group and *Merrill Lynch's* Global Private Client Group network as well as other similar institutions exclusively in the Americas. *Smith Barney's* Global Wealth Management Group and *Merrill Lynch's* Global Private Client Group network as well as other broker-dealer platforms for the purpose of this Agreement shall be referred to as the "**Distributors**". The America's shall be defined by the location of offices of the Distributors and shall be based in North, Central or South America.

**The Parties hereby acknowledge and agree on the following:**

---

[1] « US Person » means a person that (a) qualifies as (i) a « US Person » as defined under Regulation S promulgated under the US Securities Act of 1933 and (ii) a « US Person » as defined under the US Internal Revenue Code of 1986 and the Treasury Regulations promulgated thereunder.

1.   *Basis* of the Agreement

The purpose and sub*stance of this* Agreement is to define and establish the legal relationships between AFP and Pictet, relating to the ser*vices to be re*ndered by AFP. All Appendices to this *Agreement as* well as its Preamble constitute an integral part of this Agreement.

2.   Duties and obligations of AFP

2.1   General Scope of Services

Taking into account the objective of Pictet as defined in the Preamble as well as Pictet's fundamental business objectives and interest, AFP shall be available and act as contact for Pictet (or for the entities or persons Pictet might designate) and as sales and support agent between Pictet and the Distributors.

It is understood and agreed between the Parties that AFP – in its quality as independent agent - shall have no right to sign any distribution agreement with the Distributors on behalf of Pictet.

2.2   Investment Acquisition

AFP shall actively establish contact with the Distributors and shall introduce and promote the Pictet Funds to the Distributors in order to persuade the Distributors to make investments.

AFP shall furthermore continue to provide distribution services to the Distributors in relation to investments introduced by AFP.

To that end, AFP shall undertake such activities as it deems appropriate, however, shall previously consult Pictet (or the entities or persons designated by Pictet). Namely, AFP shall render the following services in connection with its duties regarding the distribution of Pictet Funds:
- organise product presentations in the markets covered by this Agreement (Appendix II) (the "Markets");
- organise and support product trainings in the Markets;
- be available to accompany Pictet staff for site visits in the Markets;
- act, in general, as a sales and support agent between Pictet and the Distributors and namely receive, forward and support dealing with enquiries made by the Distributors and/or their clients.

AFP shall obtain consent by Pictet (or by the entities or persons designated by Pictet) prior to producing and using any materials or documentation of its own to portray Pictet and/or Pictet Funds and/or any other company of Pictet, therein being included any use of the name and/or logotype "Pictet". However, materials and documentation placed at AFP's disposal by entities of the Pictet Group for marketing and sales purposes may, within the framework of applicable local legislation, be freely used by AFP.

AFP and AFP associates or staff shall not present themselves as employees of Pictet or of any other company of Pictet and AFP agrees not to undertake any actions that might lead the Distributors and/or any client of the Distributors and/or any third party to the opposite conclusion. In particular, AFP is not authorized to enter into any commitments in the name or for account of Pictet or any other company of Pictet, nor to legally bind Pictet or any other company of Pictet Group in any way, nor to provide any assurances regarding Pictet or any

2

other company of Pictet Group and/or regarding the services rendered or products offered by any such subject.

**2.3    Supporting Services**

AFP shall proactively render such supporting services as are deemed necessary and useful by Pictet and/or by the Distributors in order to provide for an accurate and efficient business development in the Markets.

As a general rule, AFP shall keep itself informed and up to date on any issues that might have an impact on the position of Pictet in the Markets and shall analyse such issues and submit proposals for action plans to Pictet on how to cope with such issues. It is understood that, thereby, AFP shall follow a pro-active approach.

**3.    Rights and Obligations of Pictet**

Pictet is entitled to establish or terminate directly or indirectly contractual relationships with the Distributors in its own name and on its own account and as it deems appropriate, according to Pictet's internal due diligence procedures.

Pictet (or the entities or persons designated by Pictet) shall support AFP in its activities by keeping AFP updated of all relevant facts and by ensuring that AFP receives the necessary material containing information about Pictet and Pictet Funds.

Pictet is entitled, where deemed necessary, to issue directives to AFP with regard to product sales, product offering, promotions and pricing.

**4.    Information Exchange**

Further to the duties of mutually keeping the other Party updated on relevant facts, as described in points 2.3 and 3 of this Agreement, the Parties agree on establishing a periodical information exchange via telephone conference.

**5.    Remuneration**

Pictet shall pay to AFP a remuneration for the services rendered under the present Agreement which shall be governed by **Appendix I** hereto, and payment shall be made to AFP's broker/dealer of record, Silver Leaf Partners, LLC, for further credit to AFP under and pursuant to the terms of this Agreement.

**6.    Confidentiality**

AFP agrees to observe strict secrecy with respect to all information and documents that belong to the sphere of business secrecy (and in particular with regard to all information and documents with relating to any Pictet Funds and their management company, any kind of commission or other payments made, or any other commercial conditions regulated, under this Agreement) that AFP learns in the course of its activity under this Agreement.

**7.    Care, Allegiance and Liability**

AFP undertakes to carry out its duties and obligations to the best of its ability and

3

conscience, with an industry standard degree of care and at all times in full compliance with
- the legal and regulatory provisions applicable in each country of the Markets and
- the fund documentation, such as the Articles of Association and Prospectus of Pictet as valid from time to time.

AFP shall carry out any activities under the present Agreement taking into account and safeguarding at all times the interests and concerns of Pictet and declares that it will abstain from practises like 'commercial arbitrage' and other practices that result in playing off the interests and concerns of Pictet against its own or any third party's interests and concerns.

AFP shall indemnify Pictet (or the entities or persons Pictet might have designated for the purposes of this Agreement) against any damages, losses or other liabilities resulting from AFP's wilful or grossly negligent breach of its legal or contractual duties and obligations or the non-fulfilment of such.

Pictet shall indemnify AFP (or the entities or persons AFP might have designated for the purposes of this Agreement with the approval of Pictet) against any damages, losses or other liabilities resulting from Pictet's wilful or grossly negligent breach of its legal or contractual duties and obligations or the non-fulfilment of such.

## 8.   Duration and Termination

a) This Agreement enters into force with retroactive effect on February 1st, 2010 and shall remain in force for an indefinite period of time. Any party may terminate this Agreement by the giving of no less than **three months written notice** to the other

b) This Agreement may be terminated by any party with **immediate effect** as follows:

(i) if, owing to political, military or other serious events (other than those of temporary nature, such as the imposition of exchange controls, significant changes in the legal or fiscal environment or sale of the Funds business) it becomes impossible or impracticable for one of the parties to comply with the terms of this Agreement and if that party cannot reasonably be expected to respect the usual period of notice;

(ii) if one of the parties fails to observe or perform the obligations set forth in clauses 2.2, 2.3 and 5 of this Agreement; or

(iii) if any of the parties enters into liquidation or ceases its activities following a shareholder resolution (other than a voluntary liquidation for the purposing of restructuring or merging) or has an administrative receiver or liquidator appointed or has a petition filed with a Court for the designation of an administrative receiver or a similar injunction or if a party ceases or threatens to cease to carry on substantially all of its business or its financial products distribution activity.

c) In the case of termination of this Agreement by Pictet due to AFP having breached any of its material obligations under this Agreement or otherwise materially jeopardizes the interests of Pictet, the latter shall be entitled to retain any earned but unpaid commissions.

d) In the event of termination of this Agreement by Pictet which is not due to AFP's material breach of this Agreement, Pictet shall continue to pay the remuneration for a period of 12 (twelve) months following the effective date of termination, based on the assets still held by the Distributors during that period.

4

9.    **Amendments to the Agreement**

Any changes to this Agreement must be made in writing and be signed by the Parties in order to be effective.

10.    **Governing Law / Place of Jurisdiction**

This Agreement including all matters related to its validity, construction, performance and enforcement shall be governed by the laws of the Switzerland. The Parties expressly agree that Geneva shall be the exclusive place of jurisdiction; provided however that, in the event of a dispute related solely to fees payable, then AFP shall have the right to initiate an arbitration action to be settled by binding and non-appealable arbitration administered by FINRA Dispute Resolution in New York, NY, in accordance with its securities arbitration rules then in force, and judgment upon such award may be entered in any court of competent jurisdiction.

Should the above mentioned dispute be initiated by Pictet, the latter shall have the choice about the appointment of the institution administering the international arbitration.

Luxembourg

Geneva, the *11.06*    2010

Pictet Funds (Europe) SA

New York, the *21.06*    2010

ATLANTIC FINANCIAL PARTNERS LLC

Craig Morong

Appendices:
- Appendix I:       Remuneration to AFP
- Appendix II:      Markets, Distributors and Investors encompassed by this Agreement

5

Appendix I:

## I. Remuneration on volume introduced by AFP

A Basis Fee of 30'000 CHF shall be paid to AFP.

## II. Maintenance Commission

On top of the Basis Fee, Pictet shall pay to AFP a Maintenance Commission based on the volume introduced by AFP for the following funds and fee schedule .

For Funds Sold to Merrill Lynch:

| Fund name | Corresponding Merrill Lynch's Share Class | AFP Fee |
|---|---|---|
| **Emerging Markets - Equity** | | |
| Pictet-Emerging Markets-P Cap | A | 0.15% |
| Pictet-Emerging Markets-R | C | 0.25% |
| Pictet-Eastern Europe-P Cap | A | 0.15% |
| Pictet-Eastern Europe-R | C | 0.25% |
| Pictet-Asian Equities (Ex Japan)-P Cap | A | 0.15% |
| Pictet-Asian Equities (Ex Japan)- R | C | 0.25% |
| Pictet-Indian Equities-P Cap | A | 0.15% |
| Pictet-Indian Equities-R | C | 0.25% |
| Pictet-Greater China-P Cap | A | 0.15% |
| Pictet-Greater China-R | C | 0.25% |
| Pictet-Middle East and North Africa-P Cap | A | 0.15% |
| Pictet-Middle East and North Africa-R | C | 0.25% |
| Pictet-Russian Equities-P Cap | A | 0.15% |
| Pictet-Russian Equities-R | C | 0.25% |
| **Theme** | | |
| Pictet-Agriculture-P Cap | A | 0.15% |
| Pictet-Agriculture-R | C | 0.25% |
| Pictet-Biotech-P Cap | A | 0.15% |
| Pictet-Biotech-R | C | 0.25% |
| Pictet-Clean Energy-P Cap | A | 0.15% |
| Pictet-Clean Energy-R | C | 0.25% |
| Pictet-Digital Communication-P Cap | A | 0.15% |
| Pictet-Digital Communication-R | C | 0.25% |
| Pictet-Generics-P Cap | A | 0.15% |
| Pictet-Generics-R | C | 0.25% |
| Pictet-Global Megatrend Selection-P Cap | A | 0.15% |
| Pictet-Global Megatrend Selection-R | C | 0.25% |
| Pictet-Premium Brands-P Cap | A | 0.15% |
| Pictet-Premium Brands-R | C | 0.25% |
| Pictet-Security-P Cap | A | 0.15% |
| Pictet-Security-R | C | 0.25% |
| Pictet-Timber-P Cap | A | 0.15% |
| Pictet-Timber-R | C | 0.25% |
| Pictet-Water-P Cap | A | 0.15% |
| Pictet-Water-R | C | 0.25% |

6

**For Funds Sold to Smith Barney:**

| Fund name | Corresponding MSSB's Share Class | AFP Fee |
|---|---|---|
| **Emerging Markets - Equity** | | |
| Pictet-Emerging Markets-P Cap | A | 0.15% |
| Pictet-Emerging Markets-R | C | 0.25% |
| Pictet-Eastern Europe-P Cap | A | 0.15% |
| Pictet-Eastern Europe-R | C | 0.25% |
| Pictet-Asian Equities (Ex Japan)-P Cap | A | 0.15% |
| Pictet-Asian Equities (Ex Japan)-R | C | 0.25% |
| Pictet-Indian Equities-P Cap | A | 0.15% |
| Pictet-Indian Equities-R | C | 0.25% |
| Pictet-Greater China-P Cap | A | 0.15% |
| Pictet-Greater China-R | C | 0.25% |
| Pictet-Middle East and North Africa-P Cap | A | 0.15% |
| Pictet-Middle East and North Africa-R | C | 0.25% |
| Pictet-Russian Equities-P Cap | A | 0.15% |
| Pictet-Russian Equities-R | C | 0.25% |
| **Theme** | | |
| Pictet-Agriculture-P Cap | A | 0.15% |
| Pictet-Agriculture-R | C | 0.25% |
| Pictet-Biotech-P Cap | A | 0.15% |
| Pictet-Biotech-R | C | 0.25% |
| Pictet-Clean Energy-P Cap | A | 0.15% |
| Pictet-Clean Energy-R | C | 0.25% |
| Pictet-Digital Communication-P Cap | A | 0.15% |
| Pictet-Digital Communication-R | C | 0.25% |
| Pictet-Generics-P Cap | A | 0.15% |
| Pictet-Generics-R | C | 0.25% |
| Pictet-Global Megatrend Selection-P Cap | A | 0.15% |
| Pictet-Global Megatrend Selection-R | C | 0.25% |
| Pictet-Premium Brands-P Cap | A | 0.15% |
| Pictet-Premium Brands-R | C | 0.25% |
| Pictet-Security-P Cap | A | 0.15% |
| Pictet-Security-R | C | 0.25% |
| Pictet-Timber-P Cap | A | 0.15% |
| Pictet-Timber-R | C | 0.25% |
| Pictet-Water-P Cap | A | 0.15% |
| Pictet-Water-R | C | 0.25% |

## CALCULATION OF THE MAINTENANCE COMMISSION

### As to Merrill Lynch's calculation

The commission shall be calculated as a percentage of the Management Fee effectively charged to each compartment of the Pictet Funds, on the basis of the total volume of Shares that are carried in the name of the Distributor on the books of the SICAV's Registrar. AFP acknowledges that only those Shares that figure in the SICAV's books in the proper name of the Distributor shall be included in the calculation of the commission.

The commission shall be calculated quarterly based on the following formula :

Number of Shares x Net Asset Value x % Management Fee x % Maintenance Commission

7

-------------------------------------------------------------------
365 (or 366 for leap years)

**As to Morgan Stanley Smith Barney's calculation :**

The Maintenance Commission shall be calculated by Pictet based on the following formula :

1) Month-end AUM / Month-end NAV = Number of month-end shares
2) (Month-end shares + previous month-end shares) / 2 months = Total average of shares *(to be applied for the whole month)*

3)     Total average shares * daily NAV * % management fee * % maintenance commission
       -------------------------------------------------------------------------------
                              365 (366 for leap years)

The Maintenance Commission due to Morgan Stanley Smith Barney shall be calculated based on the positions held on the Sicav's accounts indicated from time to time by AFP and/or Morgan Stanley Smith Barney to Pictet.

The amount of the above-mentioned Maintenance Commission shall be calculated quarterly (end-March, end-June, end-September and end-December) on the basis of a daily evaluation of the number of Shares held by each Distributor with an entity of the Pictet Group or a clearing institution.

For Shares held in custody at clearing institutions which do not provide daily positions or deposited at a third-party bank, the positions held in each Distributor's name at the end of each month will be taken into account in order to establish an average for the calculation of the Maintenance Commission. In any event, the valuation of the Shares shall be made daily.

Payments shall be made on the last business day of the month following the end of the quarter at the latest. The quarterly payment shall be made only if it amounts to or exceeds USD/EUR 100. Any payment less than USD/EUR 100 shall not be carried over to the next quarter.

For the time being no VAT is due with regard to the Maintenance Commission. Should the Maintenance Commission become liable of such a tax in the future, the Parties agree to renegotiate the terms of this Agreement.

The Maintenance Commission shall be paid on the following bank account :

| | |
|---|---|
| Bank : TD Bank | City : New York, NY |
| SWIFT : CBNAUS33 | Account Number :  791 536 1153 |
| ABA : 026013673 | FBO: Silver Leaf Partners, LLC |
| Contacts | MR. Kevin Meehan<br>Tel : 516-902-8974<br>Fax : 212-202-7534<br>e-mail : kmeehan@silverleafpartners.com |

8

Luxembourg

~~Geneva,~~ the _11 - 06_ 2010

Pictet Funds ( Europe ) SA

New York, the _10 June_ 2010

ATLANTIC FINANCIAL PARTNERS LLC

Craig Morong

9

Appendix II:

**Markets, Distributors and Investors encompassed by the Agreement**

a)  **Distributors**                    b) **Markets:**

| Merrill Lynch | Americas (North, Central and South America) |
|---|---|
| Morgan Stanley Smith Barney | Americas (North, Central and South America) |

c) **Investors**

| Merrill Lynch | US Offshore / Non US Persons as defined in the Preamble |
|---|---|
| Morgan Stanley Smith Barney | US Offshore / Non US Persons as defined in the Preamble |

•••

Luxembourg
— Geneva, the _11.06_ 2010

Pictet Funds (Europe) SA

New York, the _14 June_ 2010

ATLANTIC FINANCIAL PARTNERS LLC

Craig Moreng

10