UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| PICTET FUNDS (EUROPE) S.A. and PICTET OVERSEAS INC.,<br><br>                              Plaintiffs,<br><br>– against –<br><br>EMERGING MANAGERS GROUP, L.P. and EMG CAPITAL, LLC,<br><br>                              Defendants. | Civ. No. 14-6854 (SAS) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
<u>PRELIMINARY AND PERMANENT INJUNCTION</u>**

MAYER BROWN LLP
Mark G. Hanchet
Jeremy D. Schildcrout
1675 Broadway
New York, NY 10019
(212) 506-3500

*Attorneys for Plaintiffs
Pictet Funds (Europe) SA and
Pictet Overseas Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 1

ARGUMENT .............................................................................................................................. 4

I.  Plaintiffs Will Suffer Irreparable Injury If the Arbitration Is Not Enjoined. ......................... 4

II. Plaintiffs Are Likely to Succeed on the Merits. ..................................................................... 5

   A.  There Is No Basis for Defendants to Arbitrate Against Pictet Overseas. ........................ 6

      1.  Prior to the Filing of the Statement of Claim, the EMG Defendants and Atlantic Were Unknown to Pictet Overseas. ................................................................................ 6

      2.  The Dispute Has Nothing to Do with Pictet Overseas Business Activities. ...................... 6

   B.  PFE Did Not Agree to Arbitrate the Claim. ....................................................................... 7

      1.  The EMG Defendants' Breach of Contract Claim Must be Adjudicated Exclusively in Switzerland. ............................................................................................................ 7

      2.  The EMG Defendants Are Not Parties to the Agreement. .................................................. 9

III. The Balance of Hardships Favors Plaintiffs. ........................................................................ 10

IV. Plaintiffs' Request for Injunctive Relief is Timely. .............................................................. 11

V.  Request for Consolidation of Hearing on the Merits Pursuant to Rule 65(a)(2). ............... 13

CONCLUSION .......................................................................................................................... 14

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*AIM Int'l Trading, LLC v. Valcucine SpA,*
   188 F. Supp. 2d 384 (S.D.N.Y. 2002)..................................................................................4

*Alfa Laval U.S. Treasury Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,*
   857 F. Supp. 2d 404 (2d Cir. 2012) ......................................................................................8

*Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.,*
   2008 WL 749353 (S.D.N.Y. Mar. 20, 2008) .....................................................................11

*BCR Safeguard Holding, LLC v. Morgan Stanley Real Estate Advisor, Inc.,*
   No. CIV.A. 13-0066, 2013 WL 4434361 (E.D. La. Aug. 15, 2013) ....................................13

*Beck v. Levering,*
   947 F.2d 639 (2d Cir. 1991)................................................................................................13

*Benihana of Tokyo, LLC v. Benihana Inc.,*
   2014 WL 3631759, . (July 22, 2014) ....................................................................................5

*Castlewood (US), Inc. v. Nat'l Indem. Co.,*
   2006 WL 3026039 (S.D.N.Y. Oct. 24, 2006) .....................................................................11

*Center for Biological Diversity v. Brennan,*
   571 F. Supp. 2d 1105 (2007) ..............................................................................................13

*Citigroup Global Markets Inc. v. All Children's Hosp., Inc.,*
   2014 WL 1133401 (S.D.N.Y. Mar. 20, 2014) ......................................................................5

*Citigroup Global Mkts. Inc. v. VCG Special Opportunities Master Fund Ltd.,*
   2008 WL 4891229 (S.D.N.Y. Nov. 12, 2008)................................................................4, 10

*D.L. Cromwell Invs., Inc. v. NASD Regulation, Inc.,*
   279 F.3d 155 (2d Cir. 2002)................................................................................................13

*D. Patrick, Inc. v. Ford Motor Co.,*
   8 F.3d 455 (7th Cir. 1993) ..................................................................................................13

*E*Trade Fin. Corp. v. Deutsche Bank AG,*
   420 F. Supp. 2d 273 (S.D.N.Y. 2006)...............................................................................8, 9

*Fed. Express Corp. v. Fed Espresso, Inc.,*
   201 F.3d 168 (2d Cir. 2000).................................................................................................4

*Gates v. Chadwick,*
   812 F. Supp. 1233 (M.D. Ga. 1993) ...................................................................................13

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002)................................................................................................................5

*In re Arbitration Between Chung & President Enters. Corp.*,
   943 F.2d 225 (2d Cir. 1991)..................................................................................................11

*In re Citigroup Inc. Sec. Litig.*,
   2014 WL 3610988 (S.D.N.Y. July 21, 2014) .......................................................................4

*Krummen v. City of N. Coll. Hill, Ohio*,
   No. 1:13CV193, 2013 WL 3270372 (S.D. Ohio June 25, 2013)..........................................13

*LJL 33rd Street Assoc., LLC v. Pitcairn Properties Inc.*,
   725 F.3d 184 (2d Cir. 2013)..................................................................................................12

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*,
   43 F.3d 922 (4th Cir.1995) ...................................................................................................13

*Lynch v. Leis,*
   No. 1:00-CV-274 SJD, 2002 WL 33001391 (S.D. Ohio Feb.19, 2002)................................13

*McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*,
   85 F.2d 825 (2d Cir. 1988)....................................................................................................7

*Md. Cas. Co. v. Realty Advisory Bd.*,
   107 F.3d 979 (2d Cir. 1997)..................................................................................................10

*Morgan Stanley & Co. v. Seghers*,
   2010 WL 3952851 (S.D.N.Y. Oct. 8, 2010) .........................................................................11

*New York News Inc. v. Newspaper Guild of New York*,
   927 F.2d 82 (2d Cir. 1991)....................................................................................................8

*Sandvik, Inc. v. Libby*,
   762 F. Supp. 596 (S.D.N.Y. 1991) .......................................................................................12

*TCPIP Holding Co. v. Haar Commc'ns, Inc.*,
   244 F.3d 88 (2d. Cir 2001)....................................................................................................4

*Telenor Mobile Commc'ns AS v. Storm LLC,*
   584 F.3d 396 (2d Cir. 2009)..................................................................................................5

*UBS Secs., LLC v. Voegeli*,
   2011 WL 13465 (2d Cir. Jan. 4, 2011) .................................................................................5

*UBS Securities LLC v. Voegeli*,
   684 F. Supp. 2d 351 (S.D.N.Y. 2010) ("*Voegeli*") ..............................................................4, 5

*United Food & Commercial Workers Local 99 v. Bennett*,
　934 F. Supp. 2d 1167 (D. Ariz. 2013) ...................................................................................13

*United Parcel Serv. v. Lexington Ins. Grp.*,
　No. 12 Civ. 7961, 2013 WL 1897777 (S.D.N.Y. May 7, 2013)..............................................11

*United States v. Arant*,
　No. C07-0509RSL, 2008 WL 803131 (W.D. Wash. Mar. 24, 2008) .....................................13

*Yearby v. Parham*,
　415 F. Supp. 1236 ...................................................................................................................13

**STATUTES**

9 U.S.C. § 1................................................................................................................................12

CPLR § 7503(c) ....................................................................................................................12, 13

Federal Arbitration Act (the "FAA")..............................................................................11, 12, 13

**OTHER AUTHORITIES**

FINRA Rule 13200(a)..............................................................................................................6, 7

Federal Rule of Civil Procedure 65(a)(2) ...................................................................................13

**PRELIMINARY STATEMENT**

Pictet Overseas Inc. ("Pictet Overseas") and Pictet Funds (Europe) S.A. ("PFE") (together, "Plaintiffs"), have been improperly named as respondents in a FINRA arbitration commenced by Defendants Emerging Managers Group, L.P. and EMG Capital, LLC (together, "EMG Defendants"). By this application, Plaintiffs seek a preliminary and permanent injunction staying that arbitration (the "Arbitration") for the simple reason that neither of the Plaintiffs agreed to arbitrate the claim the EMG Defendants have asserted in their Arbitration Statement of Claim. Pictet Overseas has no relationship of any kind with either of the Defendants and there is no basis whatsoever for arbitration. PFE at least had a contractual relationship with a different entity, Atlantic Financial Partners LLC ("Atlantic"), but the governing agreement with that non-party does not require PFE to arbitrate this dispute. Without an injunction from this Court, the Plaintiffs will be forced to participate in an arbitration to which they never agreed, or risk defaulting in that proceeding. The case law from this District is clear that non-consensual arbitration is irreparable injury and warrants injunctive relief.

**STATEMENT OF FACTS**

This is an action to enjoin the EMG Defendants from prosecuting a FINRA arbitration proceeding against Pictet Funds (Europe) S.A., Pictet Asset Management S.A., and Pictet Overseas Inc., FINRA Case No. 14-01685.[1] The allegations in the Statement of Claim (the "SOC")[2] relate to a "Relationship Management Agreement" dated June 21, 2010 (the

---

[1] FINRA furnished respondent Pictet Asset Management S.A. ("PAM") with a copy of the SOC on or about June 9, 2014. FINRA staff subsequently determined that it lacked jurisdiction to hear claims against PAM (because PAM is not a FINRA member and did not consent to arbitration) and dismissed PAM from the FINRA Proceeding. FINRA served PFE and Pictet Overseas with copies of the statement of claim on or about July 9, 2014.

[2] A copy of the SOC is attached to the declaration of Laurent Moser (the "Moser Declaration" or "Moser Decl.") as Exhibit 1.

"Agreement").[3]  The only parties to the Agreement are Atlantic Financial Partners LLC ("Atlantic") and PFE.  Under the Agreement, Atlantic was to provide sales and support services to PFE.  These services included introducing and promoting certain investment funds to Distributors in order to broaden the market for PFE's financial products and services.  *See* Moser Decl. Ex. 2, Preamble.  Atlantic would receive a fee and commission for its services.  *Id.* ¶ 7.

On April 30, 2014, PFE issued a letter (the "Termination Letter") terminating the Agreement with Atlantic as of May 1, 2014 on the grounds that Atlantic had failed to provide quality services under the Agreement, failed to meet sales targets, and failed to fulfill various contractual obligations.

On May 29, 2014, the EMG Defendants filed their SOC with FINRA alleging a single cause of action, for breach of the Agreement (the "Claim").  They allege that the EMG Defendants "assumed" all rights and responsibilities under the Agreement from Atlantic on or about February 3, 2012. SOC ¶ 18.  The gravamen of the SOC is that "Pictet" breached the Agreement by terminating it pursuant to Clause 8(b)(ii), which permits termination "with immediate effect" if the counterparty fails to meet certain contractual obligations.  *See* Moser Decl. Ex. 2, Clause 8.b(ii) (citing Clauses 2.2, 2.3 and 5 of the Agreement).  The EMG Defendants allege that because they performed all of their obligations according to the terms of the Agreement, "Pictet" should have terminated the relationship between the parties via the procedure outlined in Clause 8(a), which allegedly requires three months notice prior to termination.  SOC ¶¶ 46-49.  Throughout the SOC, the EMG Defendants lump the three named respondents together under the moniker "Pictet," even though each is a distinct entity.

---

[3]  A copy of the Agreement is attached to the Moser Declaration as Exhibit 2.

Pictet Overseas is a FINRA member; however, Pictet Overseas is not a party to the Agreement, never had any kind of relationship with Atlantic or either of the EMG Defendants and does not even engage in any of the business activity described in the Agreement. *See* Declaration of Déodat Lê (the "Lê Declaration" or "Lê Decl.") ¶¶ 5-7, 9-10. Its sole office and principal place of business is in Montreal, Quebec, Canada. *Id.* ¶ 2. It has nothing to do with the underlying dispute.

PFE is not a FINRA member. PFE is a Luxembourg corporation based in Luxembourg. Moser Decl. ¶ 2. As noted, PFE is a signatory to the Agreement. Evidently, the EMG Defendants purport to assert FINRA jurisdiction over PFE as "assignees" from Atlantic and on the basis of a carve-out in the Agreement's Dispute Resolution Clause. That clause provides as follows:

> 10. Governing Law / Place of Jurisdiction
>
> This Agreement including all matters related to its validity, construction, performance and enforcement shall be governed by the laws of the [sic] Switzerland. The Parties expressly agree that Geneva shall be the exclusive place of jurisdiction; provided, however, that in the event of a dispute related solely to fees payable, then AFP [Atlantic] shall have the right to initiate an arbitration action to be settled by binding and non-appealable arbitration administered by FINRA Dispute Resolution in New York, NY, in accordance with its securities arbitration rules then in force, and judgment upon such award may be entered in any court of competent jurisdiction.

Moser Decl. Ex. 2, Clause 10. The Agreement also contains the following provision:

> 9. Amendments to the Agreement
>
> Any changes to this Agreement must be made in writing and be signed by the Parties [Atlantic and PFE] in order to be effective.

3

Moser Decl. Ex. 2, Clause 9.  There is no writing reflecting any change to the Agreement, let alone an assignment, or assumption of rights and responsibilities.  Moser Decl. ¶ 11.  PFE never agreed to arbitrate anything with the EMG Defendants.

In short, neither Plaintiff agreed to arbitrate with the EMG Defendants, FINRA has no jurisdiction, and injunctive relief should be granted.

## ARGUMENT

In order to obtain a preliminary injunction, the movant must show:  (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and (3) a balance of hardships tipping in the movant's favor.  *See e.g., TCPIP Holding Co. v. Haar Commc'ns, Inc.,* 244 F.3d 88, 92 (2d. Cir 2001); *Fed. Express Corp. v. Fed Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000); *AIM Int'l Trading, LLC v. Valcucine SpA,* 188 F. Supp. 2d 384 (S.D.N.Y. 2002).  Plaintiffs satisfy each of these requirements.  The Court should grant the injunction.

**I.     Plaintiffs Will Suffer Irreparable Injury If the Arbitration Is Not Enjoined.**

A party cannot be compelled to arbitrate against its will.  A party suffers irreparable harm when it is forced to arbitrate an issue that is not arbitrable.  *See In re Citigroup In re Citigroup Inc. Sec. Litig.,* 2014 WL 3610988, at *8 (S.D.N.Y. July 21, 2014) (citing *Merrill Lynch Inv. Managers v. Optibase, Ltd.,* 337 F.3d 125, 129 (2d Cir.2003)); *UBS Securities LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010) ("*Voegeli*") ("It is beyond dispute that irreparable harm would result if [plaintiff] were compelled to arbitrate defendants' claims without having agreed to arbitration."); *see also Citigroup Global Mkts. Inc. v. VCG Special Opportunities Master Fund Ltd.,* 2008 WL 4891229, at *6 (S.D.N.Y. Nov. 12, 2008) ("These expenditures,

4

especially where the arbitrability of the issues or the enforceability of any arbitration award is the subject of significant doubt, are an irreparable injury sufficient to support a preliminary injunction."). As Judge Cote observed in *Voegeli*, "[I]t is not merely the expense that underlies the prohibition against forcing a party to arbitrate a dispute that it did not agree to arbitrate. [Plaintiff] would also lose its right to have defendants' claims adjudicated in a court of law, rather than in an arbitral forum to whose jurisdiction is has not consented." 684 F. Supp. 2d at 354. The Second Circuit affirmed Judge Cote's decision, holding that "[b]eing forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law." *UBS Secs., LLC v. Voegeli,* 2011 WL 13465, at *1 (2d Cir. Jan. 4, 2011).

Here, neither Plaintiff consented to arbitrate the Claim. *See* Moser Decl. ¶ 13; Lê Decl. ¶ 12. The Plaintiffs will suffer irreparable injury if the Arbitration is not enjoined.

## II.    Plaintiffs Are Likely to Succeed on the Merits.

The legal standard is simple: "A party cannot be required to submit to arbitration any dispute which is has not agreed to so submit." *UBS Secs. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *Telenor Mobile Commc'ns AS v. Storm LLC,* 584 F.3d 396, 405-06 (2d Cir. 2009); *Benihana of Tokyo, LLC v. Benihana Inc.*, 2014 WL 3631759, at *6. (July 22, 2014) (citations omitted); *Citigroup Global Markets Inc. v. All Children's Hosp., Inc.*, 2014 WL 1133401, at *3 (S.D.N.Y. Mar. 20, 2014) (citing *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). Neither Pictet Overseas nor PFE has agreed to arbitrate this dispute. Accordingly Plaintiffs are likely to succeed on the merits.

A.   *There Is No Basis for Defendants to Arbitrate Against Pictet Overseas.*

1.   <u>Prior to the Filing of the Statement of Claim, the EMG Defendants and Atlantic Were Unknown to Pictet Overseas</u>.

Pictet Overseas is not a party to the Agreement.  The Agreement is between Atlantic and PFE.  Although Pictet Overseas and PFE are affiliated entities, they are separate and distinct.  Lê Decl. ¶ 8.  PFE is based in Luxembourg (Moser Decl. ¶ 2), while Pictet Overseas' only office is in Montreal.  Lê Decl. ¶ 2.  Defendants attempt to obscure this fact by improperly conflating the respondents in the Arbitration by using the label "Pictet."  However, the SOC refers explicitly to Pictet Overseas only twice – in the introductory paragraph and when identifying the parties.  The SOC attributes no actions to Pictet Overseas.  Moreover, the exhibits to the SOC, the Agreement and the Termination Letter, make no mention of Pictet Overseas which is hardly surprising.  Pictet Overseas does not even engage in the business line covered by the Agreement.  The fact is, prior to being improperly named in the SOC, Pictet Overseas had no record of the EMG Defendants or Atlantic.  *Id.* ¶¶ 6, 10.  Pictet Overseas never agreed to arbitrate any dispute with Defendants.  Defendants should not be permitted to pursue claims against Pictet Overseas in FINRA arbitration.

2.   <u>The Dispute Has Nothing to Do with Pictet Overseas' Business Activities</u>.

Defendants' assertion that the dispute is "subject to mandatory arbitration pursuant to FINRA Rule 13200(a)" (SOC ¶ 12) is incorrect.  Rule 13200(a) provides, in relevant part, that "a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member . . . and is between or among members; members and Associated Persons; or Associated Persons."  As noted above, the dispute set forth in the SOC has no relationship whatsoever to Pictet Overseas or its business activities.  Pictet Overseas has never done business with Atlantic or either of the EMG Defendants and, as noted, Pictet Overseas is not even engaged in the type

6

of business reflected in the Agreement. Le Dec. ¶ 9.  Accordingly, Rule 13200(a) does not require Pictet Overseas to arbitrate the dispute.

> B. *PFE Did Not Agree to Arbitrate the Claim.*
>> 1. <u>The EMG Defendants' Breach of Contract Claim Must be Adjudicated Exclusively in Switzerland</u>.

The Dispute Resolution Clause provides as follows:

> This Agreement including **all matters related to its validity, construction, performance and enforcement** shall be governed by the laws of the [sic] Switzerland.  The Parties expressly agree that **Geneva shall be the exclusive place of jurisdiction**; provided however that, in the event of a dispute related solely to fees payable, then AFP shall have the right to initiate an arbitration action to be settled by binding and non-appealable arbitration administered by FINRA Dispute Resolution in New York, NY, in accordance with its securities arbitration rules then in force and judgment upon such award may be entered in any court of competent jurisdiction.  Should the above mentioned dispute be initiated by Pictet, the latter shall have the choice about the appointment of the institution administering the international arbitration.

Moser Decl. Ex. 2, Clause 10 (emphases added).  This clause mandates that all matters relating to the parties' performance be adjudicated in Geneva, pursuant to Swiss law.  Here, the issue is whether Defendants' performance was adequate; if it was not adequate, PFE was entitled to terminate the Agreement.  In other words, the dispute falls within the provision calling for "all matters related to . . . performance" and must exclusively be adjudicated in Switzerland.

Defendants apparently maintain that this dispute is merely one "related solely to fees payable" and thus can be adjudicated in a FINRA arbitration proceeding.  This is incorrect.  The carve-out in the Dispute Resolution Clause that the Defendants rely on is a "narrow" arbitration clause.  *See McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 85 F.2d 825, 832 (2d Cir. 1988) ("We conclude that the clause at issue here is a narrow one.  It is not the sort of broad clause in which parties agree 'to submit to arbitration disputes of any nature or character,' or simply 'any and all disputes.'") (quoting *Prudential Lines, Inc. v. Exxon Corp.*,

7

704 F.2d 59, 64 (2d Cir. 1983). *See Alfa Laval U.S. Treasury Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 857 F. Supp. 2d 404, 409 (2d Cir. 2012) (clause lacking "very expansive language typical of broad arbitration clause" is a narrow clause); *New York News Inc. v. Newspaper Guild of New York*, 927 F.2d 82, 83 (2d Cir. 1991) (arbitration clause is narrow since it covers "only specific types of disputes"). "Faced with a narrow arbitration clause, a court considering the appropriate range of arbitrable issues must consider whether the [question at] issue is on its face within the purview of the clause." *New York News Inc.*, 927 F.2d at 83-84 (citing *McDonnell Douglas Fin Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988); *Rochdale Village, Inc. v. Public Serv. Employees Union*, 605 F.2d 1290, 1295 (2d Cir. 1979)) (punctuation modified). "When a contract contains both a broad disputes provision permitting lawsuits and also an arbitration agreement set forth in one narrow context, courts routinely limit the arbitration requirement to disputes arising squarely in the narrow context." *E*Trade Fin. Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273, 285-86 (S.D.N.Y. 2006) (citations omitted).

Several allegations integral to the SOC underscore the fact that the dispute does not relate "solely to fees payable." In fact, resolving this dispute will require analyzing competing interpretations of the Agreement (i.e. the "construction" of the Agreement), and evaluating whether each party to the Agreement met its contractual obligations (i.e., "performed" according to the terms of the Agreement). For instance, the EMG Defendants allege, among other things, that while Plaintiffs "[p]urported to terminate the Agreement pursuant to Clause 8(b)(ii)[,]" the EMG Defendants "*performed* all of [their] obligations under the Agreement, [so] Pictet may not terminate the Agreement pursuant to Clause 8(b)(ii)." SOC ¶¶ 46-47. The EMG Defendants also allege: "Pursuant to Clause 8(d), because Pictet is terminating for reasons other than EMG's

material breach of the Agreement, Pictet must pay EMG the remuneration owing under Section 5 . . . ." *Id.* ¶ 50. Defendants also allege that "EMG diligently preformed all of its obligations under the Agreement, including under Clauses 2.2 and 2.3[,]" (*id.* ¶ 29), and detail the many ways in which they purportedly met their contractual obligations. *See e.g., id.* ¶¶ 30-32. They further allege that "Pictet" manufactured a pretense for termination by creating obligations not specifically enumerated in the Agreement. *See id.* ¶¶ 38-40. In other words, the dispute is far from being "solely" about fees payable.

Adjudicating these allegations will necessarily require a contractual analysis and an evaluation of whether the contracting parties met their obligations. Defendants' attempt to characterize the underlying controversy as a dispute related "solely to fees payable" is unavailing. The dispute must be resolved in Geneva, and not in FINRA arbitration.

      2.  *The EMG Defendants Are Not Parties to the Agreement*.

Because the EMG Defendants are not parties to the Agreement, even if the dispute related "solely to fees payable" (and it does not), the EMG Defendants still would not be entitled to the benefits of the clause. As noted above, the only parties to the Agreement are PFE and Atlantic. Further, the Agreement provides that "[a]ny changes to this Agreement must be made in writing and be signed by the Parties in order to be effective." Moser Decl. Ex. 2, Clause 9. The EMG Defendants do not allege, nor can they, that the Agreement was modified in writing and signed by the Parties. It was not.

Rather, the EMG Defendants vaguely allege that "Prior to assumption of rights and responsibilities, EMG received Pictet's consent to do so." SOC ¶ 18. But they fail to state which of the EMG Defendants supposedly "assumed all of [Atlantic's] rights and responsibilities under the Agreement" or how that assumption was supposedly effected. And insofar as Atlantic, as of October 3, 2014, remains an active LLC in the State of New Jersey (see Declaration of

9

Mark G. Hanchet ("Hanchet Decl.") Ex. A), in the absence of a signed writing containing an assignment or other conveyance of rights and obligations to some other entity, Atlantic remains the sole counterparty to the Agreement, opposite PFE. The EMG Defendants cannot unilaterally opt-in to the Agreement and purport to insist on FINRA arbitration.

### III. The Balance of Hardships Favors Plaintiffs.

Finally, injunctive relief is appropriate and necessary because the balance of hardships weighs in favor of Plaintiffs. Absent an injunction, Plaintiffs will be required to respond to the SOC and, as noted above, arbitrate a dispute they never agreed to arbitrate in a forum without jurisdiction.

Courts in this District repeatedly have held that in similar circumstances, the balance of hardships favors injunctive relief. In *Citibank Global Markets*, for example, even though the court found that "CGMI had not made a showing of probable success" that the claimant was not its customer (2008 WL 4891229, at *4), it found that the balance of hardships so strongly favored the plaintiff that it granted the injunction anyway:

> Given that a preliminary injunction will simply maintain the status quo until this Court decides the underlying issues, the balance of hardships also tips decidedly in CGMI's favor. VCG will eventually be able to pursue its claim in arbitration if this Court decides that CGMI is a proper respondent. Conversely, if the Court were to deny the preliminary injunction motion, CGMI would be forced to expend time and resources to defend itself in an arbitration to which it may ultimately be determined not to have been a proper party, and any award would be unenforceable. Because CGMI has shown irreparable harm and sufficiently serious questions going to the merits of its case, CGMI's motion for preliminary injunction is granted.

*Id.* at *6.

Other cases agree that mere delay does not outweigh the expense and risk of being forced to participate in an improper forum. *See Md. Cas. Co. v. Realty Advisory Bd.*, 107 F.3d 979, 985 (2d Cir. 1997) ("Should the Union ultimately prevail, the dispute would go to arbitration and,

were the arbitrator to rule in its favor, the present injunction does not prevent the Union from fully recovering any monetary award it may be entitled to."); *Morgan Stanley & Co. v. Seghers*, 2010 WL 3952851, at *7 (S.D.N.Y. Oct. 8, 2010) ("The balance of hardships tips in favor of the plaintiff in this case. Morgan Stanley has shown that, without an injunction, it would have to expend time and resources participating in the Texas Arbitration because it cannot bring a motion to dismiss before the hearing. Seghers has not identified any hardship that we will suffer from the delay of the Texas Arbitration if he is ultimately successful in the present action.").[4]

### IV. Plaintiffs' Request for Injunctive Relief is Timely.

Defendants have indicated that the CPLR governs the Arbitration. They are incorrect. The Federal Arbitration Act (the "FAA") governs. *See United Parcel Serv. v. Lexington Ins. Grp.*, No. 12 Civ. 7961, 2013 WL 1897777 at *2 (S.D.N.Y. May 7, 2013) ("Arbitration clauses are subject to the FAA."). The "FAA governs all questions before a federal court regarding the validity and enforceability of arbitration agreements if: (1) the parties have entered into a written arbitration agreement; (2) there exists an independent basis for federal jurisdiction; and (3) the underlying transaction involves interstate commerce." *See In re Arbitration Between Chung & President Enters. Corp.*, 943 F.2d 225, 229 (2d Cir. 1991). When all three elements are met, "federal arbitration law, rather than New York arbitration law, should be applied in reviewing the petition." *Id.*

Defendants invoke the arbitration carve-out in the Agreement, diversity provides an independent basis for jurisdiction, and the underlying transaction involves interstate commerce.

---

[4] *See also Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.*, 2008 WL 749353, at *9 (S.D.N.Y. Mar. 20, 2008) ("[T]he balance of hardships weighs in favor of [plaintiff]. [Plaintiff] has demonstrated that it would be irreparably harmed if forced to expend time and resources arbitrating an issue that is not subject to arbitration."); *Castlewood (US), Inc. v. Nat'l Indem. Co.*, 2006 WL 3026039, at *7 n.7 (S.D.N.Y. Oct. 24, 2006) ("[T]he balance decidedly tips in Castlewood's favor, as it would be forced to expend time and other resources to defend itself in an arbitration it did not agree to[.]").

"Interstate commerce" is "commerce among the States or with foreign nations." 9 U.S.C. § 1. PFE is a Luxembourg corporation (*see* Moser Decl. ¶ 2), Atlantic is a New Jersey LLC with addresses in New York and New Jersey (s*ee* Moser Decl. Ex. 2, Hanchet Decl. Ex. A)[5] and the Agreement relates to nationwide, if not global, commercial activity. The Agreement describes Atlantic as "an independent firm specialised [sic] in the field of business development for financial services and investment products worldwide[.]" Moser Decl. Ex. 2, Preamble. Atlantic was "to act as a sales agent in the Americas" for PFE. *Id.*

Accordingly, the FAA applies, and because the FAA contains no time within which to object or move to stay an arbitration, the present motion is timely. *See e.g., Sandvik, Inc. v. Libby*, 762 F. Supp. 596, 599 (S.D.N.Y. 1991) (noting that there is no time limitation under the FAA and stating, "[when] a case arises under the Federal Arbitration Act, federal, and not state, arbitration law applies. [CPLR § 7503(c)] is therefore not applicable.") (citing *Rothberg v. Loeb, Rhoades & Co.*, 445 F. Supp. 1336, 1339 (S.D.N.Y. 1978)).

To the extent that Defendants argue that CPLR § 7503(c) required that Plaintiffs move to stay arbitration within 20 days, they are incorrect. The Second Circuit recently addressed this precise issue and ruled otherwise, finding that while CPLR § 7503(c) may apply to "objections to arbitrate on the grounds that 'valid agreement was not made or has not been complied with' and to objections based on time limitations[,]" it does not apply to objections on the grounds that arbitration is "limited to specified issues[.]" *LJL 33rd Street Assoc., LLC v. Pitcairn Properties Inc.*, 725 F.3d 184, 192 (2d Cir. 2013) (internal punctuation modified). Here, the gravamen of Plaintiffs' objection is that the narrow arbitration clause at issue is limited to specific issues

---

[5] Moreover, even if Defendants are successors or assignees to the Agreement (and, as noted above, they are not), defendant Emerging Managers Group, L.P. is a Delaware Limited Partnership, and defendant EMG Capital, LLC is a Florida limited liability corporation. *See* SOC ¶¶ 7-8.

between specific parties.  Accordingly, even if CPLR § 7503(c) were to apply to actions brought under the FAA, it would not apply to this particular application.

## V.        Request for Consolidation of Hearing on the Merits Pursuant to Rule 65(a)(2).

Pursuant to Rule 65(a)(2), Plaintiffs request that this Court order the consolidation of the trial on the merits with the hearing on the application for a preliminary injunction.  Consolidation is especially proper where, as here, final determination of the plaintiffs' claims "hinge[] on the issue[s] to be decided at the preliminary injunction hearing."  *D.L. Cromwell Invs., Inc.* v. *NASD Regulation, Inc.*, 279 F.3d 155, 160 (2d Cir. 2002).  It cannot be disputed that Pictet Overseas and PFE did not agree to arbitrate Defendants' claims and consolidation is appropriate.  *See D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993) (consolidation pursuant to Rule 65(a)(2) proper because "[o]n its face, this question did not call for a detailed factual inquiry").  Discovery on the issues in dispute would be improper, and the Court should order consolidation.[6]

Accordingly, Plaintiffs request that a full hearing on the merits be scheduled at the Court's earliest convenience.

---

[6] Courts outside of this circuit have also found that where the core material facts are not in dispute, the Court may grant both a preliminary and a permanent injunction simultaneously, and without additional evidence or discovery. *See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 938  (4th Cir.1995) ("court need not conduct an evidentiary hearing before issuing a permanent injunction if the affidavits and documentary evidence clearly establish the plaintiff's right to the injunction such that a hearing would not have altered the result."); *Beck v. Levering*, 947 F.2d 639, 642-42 (2d Cir. 1991) (rejecting argument that evidentiary hearing must be held in order to issue permanent injunction in case where material facts were not in dispute); *United Food & Commercial Workers Local 99 v. Bennett*, 934 F. Supp. 2d 1167, 1188 (D. Ariz. 2013) ("A court must usually conduct an evidentiary hearing before converting a preliminary injunction into a permanent injunction, but this is not necessary 'when the facts are not in dispute[.]'") (quoting *Charlton v. Estate of Charlton*, 842 F.2d 988, 989 (9th Cir. 1988)); *United States v. Arant*, No. C07-0509RSL, 2008 WL 803131, at *3 (W.D. Wash. Mar. 24, 2008) (same); *Center for Biological Diversity v. Brennan*, 571 F. Supp. 2d 1105, 1134 n. 7 (2007) (same) (citations omitted);  *Lynch v. Leis*, No. 1:00-CV-274 SJD, 2002 WL 33001391, at *4 (S.D. Ohio Feb.19, 2002) ("[W]hen there is no dispute of material fact alleged, the Court may grant a permanent injunction without an evidentiary hearing.")  Indeed, courts frequently issue preliminary and permanent injunctions at the same time.  *See Gates v. Chadwick*, 812 F. Supp. 1233, 1235 (M.D. Ga. 1993) (granting motion for preliminary and permanent injunction in same order); *Yearby v. Parham*, 415 F. Supp. 1236, 1243 (same);  *Lynch*, 2002 WL 33001391 (same); *BCR Safeguard Holding, LLC v. Morgan Stanley Real Estate Advisor, Inc.*, No. CIV.A. 13-0066, 2013 WL 4434361 (E.D. La. Aug. 15, 2013) (same); *Krummen v. City of N. Coll. Hill, Ohio*, No. 1:13CV193, 2013 WL 3270372 (S.D. Ohio June 25, 2013) (granting motion for temporary restraining order and preliminary and permanent injunction in same order).

## **CONCLUSION**

For all of the foregoing reasons, this Court should issue an order preliminarily and permanently enjoining Defendants from prosecution their claims against Plaintiffs in FINRA arbitration.

Dated:      New York, New York
            October 3, 2014

                                                    /s/ Mark G. Hanchet_____

                                            MAYER BROWN LLP
                                            Mark G. Hanchet
                                            Jeremy D. Schildcrout
                                            1675 Broadway
                                            New York, NY 10019
                                            (212) 506-2500

                                            *Attorneys for Plaintiffs*
                                            *Pictet Funds (Europe) S.A. and*
                                            *Pictet Overseas Inc.*