**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X

**PICTET FUNDS (EUROPE) S.A. and PICTET**
**OVERSEAS INC.,**

**Plaintiffs,**

**v.**

**EMERGING MANAGERS GROUP, L.P. and**
**EMG CAPITAL, LLC,**

**Defendants.**

------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/1/14

**OPINION AND ORDER**

**14-cv-6854 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Pictet Funds (Europe) S.A. ("PFE") and Pictet Overseas Inc. ("Pictet Overseas") bring this action pursuant to the Federal Arbitration Act ("FAA")[1] to enjoin a Financial Industry Regulatory Authority ("FINRA") arbitration in which they were named respondents by Emerging Managers Group, L.P. ("EMG") and EMG Capital, LLC ("EMG Capital"). The arbitration was commenced by the filing of a Statement of Claims and Demand for Arbitration ("SOC") in which EMG and EMG Capital bring a single claim for breach of contract against PFE and

---

[1]    9 U.S.C. § 1 *et seq.*

1

Pictet Overseas.[2]  The Claim arises out of a contract entered into by PFE and non-party Atlantic Financial Partners LLC ("AFP").[3]  The Agreement contains a general dispute resolution clause, as well as a provision permitting FINRA arbitration for disputes initiated by AFP "related solely to fees payable."[4]

Plaintiffs move to preliminarily enjoin the arbitration pursuant to Federal Rule of Civil Procedure 65(a).  They contend that the arbitration cannot proceed against Pictet Overseas because it is not party to the Agreement, or against PFE, as the Claim is beyond the limited scope of the Agreement's arbitration clause.[5]

Defendants now move to dismiss this case for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to compel arbitration under the FAA.  They argue that the arbitrator – not this Court – must

---

[2]     *See* 5/29/14 SOC, Ex. A to 10/3/14 Declaration of Déodat Lê, Chief Compliance Officer of Pictet Overseas ("Lê Decl."); 10/17/14 Declaration of Rishi Bhandari, defendants' lawyer ("Bhandari Decl."), ¶ 2.  Under FINRA Rule 13300, statements of claim are to be filed with the Director of FINRA Dispute Resolution, who then serves the parties.

[3]     6/10/10 Relationship Management Agreement (the "Agreement"), Ex. 2 to 8/26/14 Declaration of Laurent Moser, Head of Compliance at PFE ("Moser Decl.").

[4]     *Id.* § 10.

[5]     *See* Memorandum of Law in Support of Motion for Preliminary and Permanent Injunction ("Pl. Mem."), at 5-9.

resolve the issues raised by plaintiffs, including the scope of the arbitration clause.[6]

Moreover, they assert that plaintiffs' action is time-barred under the statute of

limitations set forth in section 7503(c) of New York's Civil Practice Law and

Rules ("section 7503(c)").

      During a telephone conference held on October 28, 2014, the parties

agreed that an evidentiary hearing on the request for a preliminary injunction was

not required.  They contend that there are two dispositive issues that can be

decided as a matter of law.  For plaintiffs, this issue is whether the Claim is

arbitrable; for defendants, whether the suit is time-barred by section 7503(c).

      For the reasons discussed below, I conclude that the question of

arbitrability is properly before this Court and that section 7503(c) does not bar

plaintiffs' suit for injunctive relief.  Based on the parties' submissions, I further

conclude that plaintiffs are entitled to a preliminary injunction.  Accordingly,

plaintiffs' motion is GRANTED, and defendants' motion is DENIED.

## II.    BACKGROUND AND FINDINGS OF FACT

### A.    The Parties

      PFE is a Luxembourg corporation based in Luxembourg.  Among

---

[6]    *See* Memorandum of Law in Support of Defendants' Motion to Dismiss or in the Alternative to Compel Arbitration at 7-11.

other things, PFE manages certain investment funds outside of the United States.[7]
It entered into the Agreement – with non-party AFP – in June 2010.[8]  PFE is not a
member of FINRA.[9]

Pictet Overseas is a Canadian corporation based in Montreal,
Canada.[10]  It is a member of FINRA, but it is not a party to the Agreement.[11]

EMG is a Delaware limited partnership with its principal place of
business in New York.[12]  It is not a member of FINRA.[13]  AFP's members
transferred their ownership interests to EMG in April 2012.[14]

EMG Capital is a Florida limited liability corporation with its

---

[7]     *See* Complaint for Injunctive Relief ("Compl.") ¶¶ 7, 18.

[8]     *See id.* ¶ 15.

[9]     *See id.* ¶ 7.

[10]    *See id.* ¶ 8.

[11]    *See id.* ¶¶ 8, 15, 17.

[12]    *See id.* ¶ 9.

[13]    *See* SOC ¶ 7.

[14]    *See* 4/16/12 Business Acquisition Agreement, Ex. A to 10/17/14
Declaration of Karan Trehan, Managing Partner of EMG ("Trehan Decl."), §2(a).
In the schedule listing all contracts to which AFP is a party, the Business
Acquisition Agreement includes "Pictet Funds (Europe) S.A.," but not Pictet
Overseas.

principal place of business in Miami, Florida.[15]  It is a FINRA member.[16]

### B.    The Agreement

Under the Agreement, AFP agreed to provide sales and support services to PFE, which included introducing and promoting PFE funds to broker-dealer networks – such as Merrill Lynch's Global Private Client Group – in the United States.[17]  AFP was paid fees and commissions for its services.[18]

The Agreement states that "[a]ny party may terminate this Agreement by the giving of no less than *three months written notice* to the other."[19]  However, PFE could terminate the Agreement with "immediate effect" if AFP failed to "observe or perform [its] obligations" under the "Investment Acquisition" and "Supporting Services" provisions of the Agreement.[20]  Likewise, AFP could terminate the agreement without notice if PFE failed to perform its obligations

---

[15]     *See* Compl. ¶ 10.

[16]     *See* SOC ¶ 8.

[17]     *See* Compl. ¶ 18.

[18]     *See id.*

[19]     Agreement § 8(a) (emphasis in original).

[20]     *Id.* § 8(b)(ii).  Among other things, the Investment Acquisition clause describes AFP's obligation to "actively establish contact" with dealer networks. *Id.* § 2.2.  The "Supporting Services" provision requires AFP to "proactively render such supporting services as are deemed necessary and useful by [PFE] . . . ." *Id.* § 2.3.

5

under the "Remuneration" provision.[21]

> The Agreement further provides that:
>
> > In the case of termination of this Agreement by [PFE] due to AFP having breached any of its material obligations under this Agreement or otherwise materially jeopardizes [sic] the interests of [PFE], the latter shall be entitled to retain any earned but unpaid commissions.
> >
> > In the event of termination of this Agreement by [PFE] which is not due to AFP's material breach of this Agreement, [PFE] shall continue to pay the remuneration for a period of 12 (twelve) months following the effective date of termination, based on the assets still held by the Distributors during that period.[22]

Thus, under the Agreement, termination based on material breach under section 8(b)(ii), as opposed to termination with notice under section 8(a), results in fifteen fewer monthly payments to AFP – three months for the notice period, and twelve months for the year following the effective date of termination.

> The Agreement's "Governing Law / Place of Jurisdiction" provision states that:
>
> > This Agreement including all matters related to its validity, construction, performance and enforcement shall be governed by the laws of the [sic] Switzerland.  The Parties expressly agree that

---

[21]    *See id.* § 8.3(ii).  The Remuneration provision states that PFE "shall pay to AFP a remuneration for the services rendered under the present Agreement which shall be governed by Appendix I hereto, and payment shall be made . . . pursuant to the terms of this Agreement."  *Id.* § 5.  Appendix I sets forth the terms for calculating remuneration.

[22]    *Id.* § 8(c) and (d).

6

Geneva shall be the exclusive place of jurisdiction; provided, however, that in the event of a dispute related solely to fees payable, then AFP shall have the right to initiate an arbitration action to be settled by binding and non-appealable arbitration administered by FINRA Dispute Resolution, NY, in accordance with its securities arbitration rules then in force, and judgment upon such award may be entered in any court of competent jurisdiction.

Should the above mentioned dispute be initiated by [PFE], the latter shall have the choice about the appointment of the institution administering the international arbitration.[23]

## C.    The Parties' Dispute

On April 30, 2014, PFE terminated the Agreement – effective May 1 – citing, among other things, AFP's and EMG's poor performance.[24]  On May 29, defendants commenced the Arbitration by filing the SOC.[25]  The SOC alleges that "[b]ecause EMG [ ] performed all of its obligations under the Agreement . . . . [PFE's] purported termination of the Agreement" for cause – *i.e.*, without notice – constitutes a breach by PFE.[26]

Defendants seek $339,000 in compensatory damages, the bulk of which represents the fifteen months of commissions defendants would have

---

[23]     *Id.* § 10.

[24]     *See* 4/30/14 letter from PFE to AFP and EMG Capital, Ex. F to Trehan Decl.; Compl. ¶ 19.

[25]     *See* Compl. ¶ 20.

[26]     SOC ¶¶ 47-48.

received had the Agreement been terminated with notice.[27]  They also seek

attorneys' fees and punitive damages.

## III.    STANDARD OF REVIEW

### A.    Preliminary Injunction[28]

        "'The district court has wide discretion in determining whether to

grant a preliminary injunction . . . .'"[29]  Nonetheless, "'[a] preliminary injunction is

an extraordinary remedy never awarded as of right.'"[30]  "'A party seeking a

preliminary injunction in this circuit must show: (1) irreparable harm in the

absence of the injunction and (2) either (a) a likelihood of success on the merits or

(b) sufficiently serious questions going to the merits to make them a fair ground for

---

[27]     *See id.* ¶¶ 34-37; *see also* Agreement § 8(a) and (d).

[28]     Under the FAA, a district court must compel parties to arbitrate a dispute covered by a binding arbitration agreement.  *See* 9 U.S.C. § 4.  While the FAA does not expressly state that a court may enjoin an arbitration, the Second Circuit has held that district courts have such power in actions brought under the FAA.  *See Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 213 (2d Cir. 2014) ("Federal courts generally have remedial power to stay arbitration.").

[29]     *International Bus. Mach. Corp. v. Johnson*, 355 Fed. App'x 454, 455 (2d Cir. 2009) (quoting *Moore v. Consolidated Edison*, 409 F.3d 506, 511 (2d Cir. 2005)).

[30]     *UBS Fin. Servs., Inc. v. West Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

litigation and a balance of hardships tipping decidedly in the movant's favor.'"[31]

"A preliminary injunction preserves the status quo pending final resolution of litigation."[32]

"'To satisfy the irreparable harm requirement, [petitioner] must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.'"[33]  Moreover, irreparable harm by definition "'cannot be remedied by an award of monetary damages.'"[34]  In determining whether a plaintiff has demonstrated a likelihood of success on the merits of the "ultimate case, a court is not called upon finally to decide the merits of the controversy[;] . . . [i]t is necessary only that the court find

---

[31]     *County of Nassau, N.Y. v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008) (quoting *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004)).

[32]     *Bank of N.Y. Co. v. Northeast Bancorp*, 9 F.3d 1065, 1067 (2d Cir. 1993).

[33]     *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)).

[34]     *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 97 (2d Cir. 2005) (quoting *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995)). *Accord Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) ("[W]here monetary damages may provide adequate compensation, a preliminary injunction should not issue.").

that the plaintiff has presented a strong prima facie case to justify the discretionary issuance of preliminary relief."[35]

### B.    Rule 12(b)(6) Motion to Dismiss

#### 1.    General Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "construe the complaint liberally, accept all [non-conclusory] factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor."[36]  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[37]  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[38]  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[39]

---

[35]    *Gibson v. U.S. Immigration & Naturalization Serv.*, 541 F. Supp. 131, 137 (S.D.N.Y. 1982) (citation omitted).

[36]    *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013) (quotation marks and brackets omitted).  *Accord Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008)).

[37]    *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[38]    *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

[39]    *Id.* (quotation marks omitted).

10

When deciding a motion to dismiss, a district court may consider the facts alleged in the complaint, as well as "'documents attached to the complaint as exhibits[ ] and documents incorporated by reference in the complaint.'"[40]  A court may also consider a document that is not incorporated by reference "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[41]

### 2.    Application to Statute of Limitations

"The lapse of a limitations period is an affirmative defense that a defendant must plead and prove."[42]  "However, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint."[43]  Thus, "[i]f the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal

---

[40]    *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).

[41]    *DiFolco*, 622 F.3d at 111 (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  *Accord Taveras v. UBS AG*, 708 F.3d 436, 442 (2d Cir. 2013) (stating that when reviewing a complaint on a motion to dismiss, courts "may consider documents [the complaint] incorporates by reference, as well as documents upon which it relies heavily") (quotation marks omitted).

[42]    *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (citing Fed. R. Civ. P. 8(c)(1)).

[43]    *Id.*

for failure to state a claim . . . ."[44]

## IV.   DISCUSSION

### A.   Jurisdiction

As a threshold matter, I conclude that there is subject matter jurisdiction over this dispute.  The FAA "creates a body of federal substantive law of arbitrability applicable to arbitration agreements affecting interstate commerce."[45]  However, it does not "independently confer subject matter jurisdiction on the federal courts."[46]  Accordingly, "there must be an independent basis of jurisdiction before a district court may entertain petitions under the [FAA]."[47]  Here, subject matter jurisdiction is premised on diversity pursuant to section 1332 of title 28 of the United States Code.  The Complaint alleges, and defendants do not dispute, that the Court has diversity jurisdiction, as the amount in controversy exceeds $75,000, and complete diversity exists among the parties.[48]

### B.   Questions of Arbitrability Are for This Court

---

[44]   *Jones v. Bock*, 549 U.S. 199, 215 (2007).

[45]   *Ragone v. Atlantic Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (citation omitted).

[46]   *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 63 (2d Cir. 2009).

[47]   *Id.* (quotation marks and alterations omitted).

[48]   *See* Compl. ¶ 12.

The "'[q]uestion[ ] of arbitrability' is a term of art covering 'dispute[s] about whether the parties are bound by a given arbitration clause' [i.e., formation] as well as 'disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy' [i.e., scope]."[49]  It is "'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'"[50]  In other words, "[t]he proper inquiry is whether 'there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator[s].'"[51]  And although federal policy

---

[49]     *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 71 (2d Cir. 2012) (quoting *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 293 (2d Cir. 2011) (brackets in original).

[50]     *Id.* (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).  *Accord NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, --- F.3d ----, No. 13-2657-cv, 2014 WL 5486457, at *18 (2d Cir. Oct. 31, 2014).

[51]     *Alliance Bernstein Inv. Research and Mgmt, Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006) (quoting *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005)) (emphasis in original).  The Second Circuit has noted that New York and federal law are the same on the issue of arbitrability.  *See Contec Corp.*, 398 F.3d at 208 n.1 ("New York law . . . follows the same standard as federal law which respect to who determines arbitrability: generally, it is a question for the court unless there is 'a clear and unmistakable agreement to arbitrate arbitrability.'") (quoting *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.2d 115, 121 (2d Cir. 2003)).  However, I note that the FAA differs from New York law in that the issues of procedural arbitrability – such as time limits and conditions precedent – are presumptively for the arbitrator to decide.  *See Howsam*, 537 U.S. at 85 ("[I]n the absence of an agreement to the contrary, . . . issues of

favors arbitration, it is a matter of consent under the FAA.[52]  Thus, when doubts

concern who shall decide issues of arbitrability, "the law then reverses the

presumption to favor judicial rather than arbitral resolution."[53]

### 1. The Agreement Does Not Clearly and Unmistakably Submit the Issue of Arbitrability to FINRA Arbitrators

Defendants contend that because the Agreement makes FINRA's rules

applicable to the arbitration of disputes, PFE agreed to be bound by FINRA Rule

13134, which states that the "[p]anel has the authority to interpret and determine

the applicability of all provisions under the" FINRA Code of Arbitration Procedure

for Industry Disputes (the "Code").  It is true that the Second Circuit has stated that

the predecessor to Rule 13134, "clearly and unmistakably evinces the parties'

intent to submit to arbitration disputes over arbitrability that turn on interpretations

of provisions *of the Code*."[54]  However, the reference to FINRA's rules in the

_____

procedural arbitrability, *i.e.*, whether prerequisites such as time limits, notice,
laches, estoppel, and other conditions precedent to an obligation to arbitrate have
been met, are for the arbitrators to decide.") (quotation marks and emphasis
omitted).

[52]    *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*,
252 F.3d 218, 224 (2d Cir. 2001).

[53]    *Shaw Grp. Inc.*, 322 F.3d at 120 (citing *First Options of Chi., Inc. v.
Kaplan*, 514 U.S. 938, 945 (1995)).

[54]    *Alliance Bernstein Inv. Research and Mgmt., Inc.*, 445 F.3d at 127
(emphasis added).

Agreement does not by itself evince a clear and unmistakable intent to submit questions of arbitrability to FINRA arbitrators.

FINRA's rules are mentioned in connection with the arbitration carve-out for disputes related solely to fees payable – but not in connection with the more general dispute resolution provision that calls for the resolution of disputes in Geneva, in accordance with the laws of Switzerland.[55]  In other words, FINRA's rules only apply to disputes that are within the scope of the arbitration carve-out provision.  As explained by the Second Circuit, this means that FINRA's rules do not apply "until a decision is made as to whether a question does or does not fall within the intended scope of arbitration, in short, until arbitrability is decided."[56] Accordingly, this Court is the proper forum to determine the two questions of aribitrability raised by plaintiffs with respect to PFE – whether the Claim falls within the arbitration carve-out and whether defendants, neither of which is a named party in the arbitration agreement, can enforce the Agreement.

### 2. Pictet Overseas's Membership in FINRA Does Not Constitute Clear and Unmistakable Intent to Submit the

---

[55]     *See* Agreement § 10.

[56]     *NASDAQ OMX Grp.*, 2014 WL 5486457, at \*19 (citing *Contec Corp.*, 398 F.3d at 208 *and Zachariou v. Manios*, 68 A.D. 3d 539, 539 (1st Dep't 2009) (holding that a reference to AAA rules in conjunction with narrow arbitration provision does not constitute clear and unmistakable evidence of intent to have arbitrator decide arbitrability)).

### Issue of Arbitrability to FINRA Arbitrators

Defendants argue that Pictet Overseas agreed to be bound by FINRA rules – including Rule 13134 – by virtue of its membership in FINRA.[57]   However, Rule 13134 does not apply unless the parties agreed to arbitrate.  This is because "the Code does not evidence a 'clear and unmistakable' intent to submit the issue of arbitrability to arbitrators where only one party is a [FINRA] member and the parties do not have a separate agreement to arbitrate. . . ."[58]   Thus, as with the objection raised by PFE regarding the scope of the arbitration provision in the Agreement, the initial determination of whether the parties agreed to arbitrate

---

[57]   There is no dispute that Pictet Overseas is a FINRA member.  *See* Compl. ¶ 8.  As a member, Pictet Overseas agreed to be bound by applicable FINRA rules.  *See* FINRA Rule 0140(a) ("The Rules shall apply to all members and persons associated with a member.").  A "Member" is defined as "any broker or dealer admitted to membership in FINRA."  *Id.* 13100(o).  "Associated Person" is defined as "a natural person who is registered or has applied for registration under the Rules of FINRA."  *Id.* 13100(a) and (r).  The Second Circuit has stated that "FINRA-membership constitutes an agreement to arbitrate disputes under FINRA's rules . . . ."  *In re American Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 127 (2d Cir. 2011) (quotation marks omitted).

[58]   *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 55 (2d Cir. 2001)).  *Accord American Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 127 ("Ameriprise's FINRA membership cannot serve as such clear and unmistakable evidence of the parties' intent that all future questions of arbitrability be submitted to arbitrators.") (quotation marks and alterations omitted); *Citigroup Global Mkts. Inc. v. VCG Special Opportunities Master Fund Ltd.*, No. 08 Civ. 5520, 2008 WL 4891229, at *3 (S.D.N.Y. Nov. 12, 2008), *aff'd*, 598 F.3d 30 (2d Cir. 2010).

under FINRA's rules[59] must be made by this Court.[60]

## C.    New York's Statute of Limitations[61]

### 1.    New York Law and Section 7503(c)

A party bringing an arbitration has the option under section 7503(c) to

---

[59]    In this instance, the issue is whether there is an agreement to arbitrate the Claim based on FINRA Rule 13200(a).  That rule provides:

> Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among:
> •    Members;
> •    Members and Associated Persons; or
> •    Associated Persons.

[60]    *See Bensadoun*, 316 F.3d at 175; *American Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 127 (concluding that "determining the scope of the Belands' entitlement to arbitrate (by virtue of Ameriprise's consent through its FINRA membership) is a question for judicial resolution); *J.P. Morgan Sec. Inc. v. Louisiana Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70, 77 (S.D.N.Y. 2010).

[61]    Defendants argue that even if the question of arbitrability is for this Court, plaintiffs' objections are time-barred under section 7503(c).  Plaintiffs respond that section 7503(c) does not apply to actions brought under the FAA, and their action is timely because the FAA itself does not contain a time limit for interposing objections.  *See* Pl. Mem. at 11-13.  The Second Circuit has not expressly determined whether section 7503(c) applies to actions brought under the FAA.  I have previously held that it does in an opinion where the twenty-day statute of limitations was not at issue because no notice of arbitration was served. *See In re Application of Herman Miller, Inc.*, No. 97 Civ. 7878, 1998 WL 193213, at *3 (S.D.N.Y. Apr. 21, 1998), *aff'd*, 173 F.3d 844 (2d Cir.), *cert. denied*, 528 U.S. 821 (1999).  *Herman Miller* is also distinguishable from the parties' dispute because it did not involve an attempt by a domestic entity to invoke the limitations period against international entities.

serve a demand for arbitration or a notice of intent to arbitrate both of which

trigger a time limit for bringing a proceeding to stay the arbitration.[62]  Section

7503(c) provides that:

> A party may serve upon another party a demand for arbitration or
> a notice of intention to arbitrate . . . stating that unless the party
> served applies to stay the arbitration within twenty days after such
> service [it] shall thereafter be precluded from objecting that a
> valid agreement was not made or has not been complied with and
> from asserting in court the bar of a limitation of time. . . . An
> application to stay arbitration must be made by the party served
> within twenty days after service upon [it] of the notice or demand,
> or [it] shall be so precluded.

By its terms, section 7503(c) covers three categories of objections –  the validity of

the agreement to arbitrate, compliance with the agreement, and whether the

arbitration is time-barred.[63]  The statute is strictly construed.[64]

The first two categories are most relevant here.  The validity prong

---

[62]     *See generally Jonathan Logan, Inc. v. Stillwater Worsted Mills, Inc.*,
31 A.D.2d 208 (1st Dep't 1968), *aff'd*, 24 N.Y.2d 898 (1969).

[63]     *See, e.g.*, *LJL 33rd Street Assocs., LLC v. Pitcairn Props., Inc.*, 725
F.3d 184, 192 (2d Cir. 2013); *United Services Automobile Ass'n v. Bertan*, 10
A.D.3d 542, 543 (1st Dep't 2004) ("Although respondent insurer is precluded,
pursuant to CPLR 7503(c) and a prior court order, from objecting to arbitration on
the ground that a valid agreement to arbitrate had not been made or complied with,
the insurer is not currently making such objection; it is merely objecting to
proceeding in a venue other than one to which it may be deemed to have agreed
under the governing policy.").

[64]     *See Matter of Matarasso (Continental Cas. Co.)*, 56 N.Y.2d 264, 267
(1982) (citing *Aetna Life & Casualty Co. v. Stekardis*, 34 N.Y.2d 182, 186 (1974)).

involves consideration of the viability or enforceability of the agreement.[65]  For

example, in *Fiveco, Inc. v. Haber* the New York Court of Appeals held that section

7503(c) barred an untimely action to stay an arbitration on the ground that the

contract had expired.[66]

> The second type of objection included in section 7503(c) – whether

the agreement "has not been complied with" – requires

> a judicial determination as to whether there is any preliminary
> requirement or condition precedent to arbitration to be complied
> with and, if so, whether there has been compliance with such
> requirement or condition precedent.  Thus, the parties may have
> erected a prerequisite to the submission of any dispute to
> arbitration, in effect a precondition to access to the arbitral
> forum.[67]

---

[65]    *See, e.g.*, *Sablosky v. Edward S. Gordon Co., Inc.*, 73 N.Y.2d 133, 137
(1989) (holding that an arbitration agreement is valid even though it gives one
party the option to submit future disputes to arbitration or to litigate them, while
obligating the other party to submit all disputes to arbitration); *Fok v. Insurance
Co. of N. Am.*, 151 A.D.2d 722, 722 (2d Dep't 1989) ("Where, as here, the issue is
whether a preexisting insurance policy which contained an agreement to arbitrate
had been canceled prior to the accident, the defendant's failure to move to stay
arbitration within 20 days after service upon it of the demand for arbitration bars it
from obtaining such relief.").

[66]    *See* 11 N.Y.3d 140, 144-45 (2008) (stating that this objection "simply
attacks the present viability of the contracts containing the agreement to arbitrate").

[67]    *Rockland County v. Primiano Constr. Co., Inc.*, 51 N.Y.2d 1, 7
(1980).

19

The condition precedent can also be created by statute.[68]  As many of the New York cases arise in the insurance context, a particularly germane example of this is that under New York's Insurance Law, "[p]hysical contact is a condition precedent to an arbitration based upon a hit-and-run accident involving an unidentified vehicle."[69]

Thus, in *Aetna Life & Casualty Co. v. Stekardis*, New York's Court of Appeals held that an untimely objection based on the failure to meet such a statutory condition precedent is precluded.[70]  The Court of Appeals stated that such a challenge "raises an issue whether the agreement to arbitrate has been 'complied with,' thus posing an instance of the so-called second threshold question under CPLR 7503."[71]

---

[68]      *See id.* at 7 n.1.

[69]      *GEICO v. Selin*, 119 A.D.3d 568, 568 (2d Dep't 2014).

[70]      *See* 34 N.Y.2d at 184.  *Accord Matter of Steck (State Farm Ins. Co.)*, 89 N.Y.2d 1082, 1084 (1996) (holding that section 7503(c) barred insurer from raising another statutory condition precedent under the Insurance Law and stating that "[r]espondent's argument that because the other vehicle's insurance exceeds appellant's insurance, there is no coverage under the underinsurance provisions, relates to whether certain conditions of the contract have been complied with and not whether the parties have agreed to arbitrate.  As such, respondent's contention is outside the exception articulated by this Court in *Matarasso* and is barred by the CPLR 7503(c) 20-day period to object to arbitration.").

[71]      *Stekardis*, 34 N.Y.2d at 185.  In so holding, the Court of Appeals described Aetna's objection as one of "scope."  *Id.*  However, it is evident that the

Significantly, whether an agreement is valid or has been complied with are separate and distinct from the question of whether there has been an agreement to arbitrate.  Thus, New York's Court of Appeals held in *Matter of Matarasso*, that "where the application for a stay is made on the ground that no agreement to arbitrate exists, it may be entertained notwithstanding the fact that the stay was sought after the 20-day period had elapsed."[72]  In addition, the New York Court of Appeals – in a case not concerned with the time limitation in section 7503(c) – has explained that on a motion to stay arbitration, validity is not the same as whether "the particular agreement . . . was of limited or restricted scope and [whether] the particular claim sought to be arbitrated is outside that scope."[73]

## 2.    Section 7503(c) Does Not Bar Plaintiffs' Objections

As explained by the Supreme Court, "the first principle that

---

case concerned an objection based on the failure of a condition precedent.  *See Steck*, 89 N.Y.2d at 1084; *Primiano*, 51 N.Y.2d at 7.

[72]    *Matarasso*, 56 N.Y.2d at 267.  *Accord Local 74, Serv. Emps. Int'l Union, AFL-CIO v. Ecclesiastical Maint. Servs., Inc.*, 55 F.3d 105, 109 n.1 (2d Cir. 1995) ("[U]nder Section 7503(c), a party cannot waive a claim that there is no [agreement] in existence requiring arbitration of the dispute."); *Glasser v. Price*, 35 A.D.2d 98, 101 (2d Dep't 1970) (holding that "a nonsignatory is not bound to enter into arbitration under a contract providing for that process, even though [it] ignores a notice to arbitrate").

[73]    *Primiano*, 51 N.Y.2d at 7 (citing *Gangel v. N. DeGroot, PVBA*, 41 N.Y.2d 840 (1977); *ITT Avis v. Tuttle*, 27 N.Y.2d 571 (1970)).

21

underscores all of [its] arbitration decisions [is that a]rbitration is strictly a matter of consent, and thus is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration."[74]  Thus, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue."[75]  And "[w]hen a contract contains both a broad dispute [resolution] provision permitting lawsuits and also an arbitration requirement set forth in one narrow context, courts routinely limit the arbitration requirement to disputes arising squarely in that narrow context."[76]

Thus, there is a threshold question of whether defendants initiated suit

---

[74]     *Granite Rock Co. v. International Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (quotation marks and citations omitted).

[75]     *Id.  Accord Volt Info. Scis. Inc. v. Board of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (stating that the Supreme Court has recognized that the FAA does not require parties to arbitrate when they have not agreed to do so); *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir. 1983) (stating that "if the clause is 'narrow,' arbitration should not be compelled unless the court determines that the dispute falls within the clause").

[76]     *E*Trade Fin. Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273, 285-86 (S.D.N.Y. 2006) (citing cases).  *Accord Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 525-26 (2d Cir. 2011) ("Even assuming, as the district court found, that the provisions in the two agreements could reasonably be read as complementary, we conclude that the district court erred in applying the presumption in favor of arbitration.").

in the correct forum, and under the correct law.  To resolve that question I must determine whether the parties agreed to arbitrate the Claim.[77]  In making this determination, there is no basis to favor the arbitration clause over the forum selection clause[78] – as a narrow arbitration provision there is no presumption in favor of arbitrability.[79]

---

[77]     To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should first classify the particular clause as either broad or narrow. *See, e.g.*, *Louis Dreyfus Negoce*, 252 F.3d at 224 (citing *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988)).  If the clause is narrow the court must determine whether the dispute concerns an issue that "is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." *Id.* (quotation marks omitted).  A collateral matter will generally be considered beyond the scope of a narrow arbitration clause. *See id.* (citing *Cornell Univ. v. UAW Local 2300*, 942 F.2d 138, 140 (2d Cir. 1991)). Finally, "[w]hen deciding whether the parties agreed to arbitrate a certain matter . . . . courts generally . . . should apply ordinary . . . principles that govern the formation of contracts."  *First Options of Chi., Inc.*, 514 U.S. at 944.

[78]     *Cf. The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972) ("The choice of that forum was made in an arm's length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts.").

[79]     Thus, cases applying a presumption of arbitrability are not controlling.  *See, e.g.*, *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 284 (2d Cir. 2005) ("Under our cases, if there is a reading of the various agreements that permits the Arbitration Clause to remain in effect, we must choose it: '[T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'") (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)) (alterations in original).

A review of the Agreement and the SOC reveals that the parties did not agree to arbitrate the Claim.[80]  Indeed, defendants have transparently sought to circumvent the parties' dispute resolution provision, which calls for disputes to be resolved in Geneva under Swiss law.  The SOC alleges, among other things, that while plaintiffs "[p]urported to terminate the Agreement pursuant to Clause 8(b)(ii)[,]" the defendants "*performed* all of [their] obligations under the Agreement," and therefore PFE "may not terminate the Agreement pursuant to Clause 8(b)(ii)."[81]  Likewise, defendants allege that "[p]ursuant to Clause 8(d), because [PFE] is terminating for reasons other than [EMG's] material breach of the Agreement, [plaintiffs] must pay [defendants] the remuneration owing under Section 5 . . . ."[82]

---

[80]   It appears that this Agreement is governed by Swiss law.  However, the parties have not indicated how the Agreement would be interpreted under Swiss law.  I will thus apply New York law.  *See, e.g.*, *Gangel*, 41 N.Y.2d at 841.  Under New York law, the Agreement must be read as a whole.

[81]   SOC §§ 46-47 (emphasis added).

[82]   *Id.* § 50.  Defendants further allege that EMG "diligently *performed* all of its obligations under the Agreement, including under Clauses 2.2 and 2.3," and detail how EMG met its contractual obligations.  *Id.* §§ 29, 30-32 (emphasis added).  Defendants also speculate that PFE "terminated the Agreement not because [EMG] failed to perform, but because [PFE's] funds have been so well positioned with the Distributors and their individual financial advisors . . ., that [PFE] feels it can perform all marketing of its funds in the Americas through other means."  *Id.* ¶ 41.

Thus, the crux of the SOC's allegations is that because EMG "perform[ed]" all of its obligations under the Agreement, PFE improperly invoked the "enforcement" mechanism in section 8(b)(ii) of the Agreement – which permits termination with immediate effect – instead of providing the required three-months notice under section 8(a).[83]  But under the Agreement "all matters related to its [ ] construction, performance and enforcement shall be governed by [Swiss law and] Geneva shall be the exclusive place of jurisdiction[,]" and arbitration is only permitted with respect to disputes "related solely to fees payable."[84]  In addition, defendants named Pictet Overseas – a Canadian entity that does not appear to have any relationship to the dispute between PFE and EMG – as a respondent.  The most likely explanation is that this was done for the sole purpose of compelling arbitration based on Pictet Overseas's status as a FINRA Member.

Under these circumstances, defendants cannot rely on the time limitation set forth in section 7503(c).[85]  I cannot treat the parties' narrow carve-out

---

[83]    *See* Agreement § 10.

[84]    *Id.*

[85]    The fact that plaintiffs are foreign entities calls into doubt the wisdom of electing to serve a notice under section 7503(c) in the first place. Furthermore, defendants' execution of that service raises serious questions.  *First*, defendants mailed the SOC to PFE the entity, without addressing it to the attention of a particular officer or agent of the company.  *Second*, the SOC is in English, and defendants did not provide a translation in either of the three official languages of

for disputes related to fees payable as governing the present dispute and thereby

ignore the parties' forum selection and choice of law provision.[86]  And I cannot

compel the arbitration of issues the parties did not agree to arbitrate.

    Moreover, section 7503(c) does not preclude either Pictet Overseas's

objections or PFE's objection that the dispute is beyond the scope of the parties'

narrow arbitration provision.  Pictet Overseas's objections – that it was not a party

---

Luxembourg.  *Third*, while the SOC contains the statutory language regarding the
twenty-day time limit, that notice is not included as a separate document labeled
"notice."  Instead, section 7503(c)'s statutory language is included in paragraph 15
of the SOC.   The failure to identify the statute is made all the more confusing
because the SOC references FINRA's rules.  Finally, it does not appear that
defendants attempted to comply with Luxembourg's service of process rules.
Notably, Luxembourg does not sanction the service of legal documents through
postal channels.  *Cf.  Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694,
699 (1988) (stating that "[b]y virtue of the Supremacy Clause, U.S. Const., Art. VI,
the [Hague Service] Convention pre-empts inconsistent methods of service
prescribed by state law in all cases to which it applies"); CPLR Rule 4511(b)
("Every court may take judicial notice without request of private acts and
resolutions of the congress of the United States and of the legislature of the state;
ordinances and regulations of officers, agencies or governmental subdivisions of
the state or of the United States; and the laws of foreign countries or their political
subdivisions.").

[86]  This is to be distinguished from cases in which a forum selection
clause is held to waive the right to arbitrate.  *See Patten Sec. Corp., Inc. v.
Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 406-07 (3d Cir. 1987)
(analyzing whether a forum selection clause contained in an underwriting
agreement waived arbitration provided for in a NASD rule), *abrogated on other
grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287
(1988).  Here, the arbitration carve-out leaves room for arbitration of a narrow
class of claims – namely, disputes solely related to fees payable.

to the Agreement and that its status as a FINRA member does not constitute an agreement to arbitrate the Claim – relate to the *existence* of an agreement to arbitrate, not its *validity*. Accordingly, these objections fall within the *Matarasso* exception and are not time-barred.[87]

Likewise, section 7503(c) does not bar PFE's objection that it did not agree to arbitrate the Claim by agreeing to the narrow arbitration carve-out. In *Pitcairn*, the Second Circuit held that where an objection is "that the agreement to arbitrate is limited to specified issues," section 7503(c) does not apply.[88] *Pitcairn* is controlling.

Contrary to defendants' suggestion, *Stekardis* is not inconsistent with *Pitcairn*.[89] Although *Stekardis* uses the term "scope," it concerned an objection

---

[87]     *See Matarasso*, 56 N.Y.2d at 267.  *Accord Local 74, Serv. Emps. Int'l Union, AFL-CIO*, 55 F.3d at 109 n.1; *Crum & Forster Commercial Ins. v. Yakar*, 208 A.D.2d 833, 834 (2d Dep't 1994) ("Where, as here, the party who is seeking arbitration is neither a party to nor a signatory of the contract of insurance, and thus not a party to an arbitration agreement, an application to stay arbitration may properly be made any time before the arbitration has commenced, without regard to the 20-day period contained in CPLR 7503(c)"). *Glasser*, 35 A.D.2d at 101 (same).

[88]     *Pitcairn*, 725 F.3d at 192.

[89]     In defendants' view, "*Pitcairn* does not hold that any objection [relating to] 'scope' is exempt," but rather that "a party who submits to arbitration in connection with a valid arbitration agreement does not waive its right to object if the opposing party asks the arbitrator to exceed his or her mandate." Memorandum of Law in Opposition to Plaintiffs' Motion for Injunctive Relief at 12. To the

based on the failure of a statutory condition precedent, not an objection based on

whether a claim fell within the scope of a narrow arbitration provision.  The other

authorities cited by defendants are also inapposite because they do not consider the

application of section 7503(c) to a narrow arbitration clause and/or where an

underlying agreement contains both a narrow arbitration clause and a broad dispute

resolution provision.[90]  They are also contradicted by the holdings of other

---

extent that *Pitcairn* is distinguishable, and in the absence of contrary case law, I
must "carefully . . . predict how the state's highest court would resolve the
uncertainty or ambiguity."  *Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74,
78 (2d Cir. 1999) (quotation marks omitted).  Where the state's highest court has
not spoken on an issue, courts are required to give "proper regard" to the relevant
rulings of a state's lower courts.  *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d
114, 119 (2d Cir. 1994) (quotation marks omitted).

[90]      In *Matter of Colonial Coop. Ins. (Muehlbauer)*, the arbitration clause
provided that "[a]ny controversy or claim arising out of or relating to this
Agreement, or the breach thereof, shall be settled by arbitration."  46 A.D.3d 1012,
1013 (3d Dep't 2007).  After respondent brought an action for breach of contract
and tortious interference with contract in a New Jersey court, petitioner served a
demand for arbitration which respondent did not move to stay within the required
twenty days.  Petitioner then brought an action to compel arbitration pursuant to
section 7503(a), which the lower court granted while also staying the New Jersey
action.  *See id.* at 1012-13.  On appeal, respondent argued that the arbitration
clause required it "to arbitrate contract claims only and did not include any tort
claims against [petitioner]."  *Id.* at 1013.  Presumably, therefore, respondent was
seeking to vacate the stay of the New Jersey action with respect to its tortious
interference claim, but not its breach of contract claim.  The Appellate Division
concluded that respondent's objection was barred by section 7503(c).
In the other case cited by defendants, *Hartford Insurance Co. v. Martin*, the insurer
had denied coverage after determining that "the coverage afforded by [another
insurance carrier] . . . exceeded the benefits payable under [the insurer's]
underinsured motorist endorsement" and the claimant submitted the dispute to

appellate courts.[91]

However, I am unaware of any decision by a New York court holding that section 7503(c) bars review of the arbitrability of a claim where the parties have entered into a narrow arbitration clause and/or where the parties have also entered into a broad dispute resolution provision.  This is not surprising.  *First*, the issue is not likely to arise.  This is because narrow arbitration clauses are exceedingly rare and "something of an endangered species."[92]  Most arbitration clauses are broad, such that they cover all disputes "arising out of" or "relating to"

---

arbitration.  16 A.D.3d 149, 150 (1st Dep't 2005).  While the court did not identify the objection it deemed precluded by section 7503(c), it noted that the parties agreed there was an otherwise applicable arbitration provision in their agreement. *See id.*

[91]   *See Matter of Allstate Ins. Co. v. LeGrand*, 91 A.D.3d 502, 502 (1st Dep't 2012) ("It is undisputed that the subject accident occurred while the insured was driving a rental car in Mexico.  The insured's automobile insurance policy provided benefits for accidents that occurred within the State of New York, 'the United States, its territories or possessions, or Canada.'  Since the policy did not provide for coverage in the geographic area where the accident occurred, it cannot be said that the parties ever agreed to arbitrate this claim.") (citations omitted); *Dash & Sons, Inc. v. Tops Mkts., LLC*, 30 A.D.3d 998, 999 (4th Dep't 2006) (considering argument that certain disputes did not come within the scope of arbitration clause on motion to stay filed after the twenty-day period).

[92]   *Benihana of Tokyo, LLC v. Benihana Inc.*, No. 14 Civ. 224, 2014 WL 3631759, at *10 (S.D.N.Y. July 22, 2014) (citing *China Auto Care, LLC v. China Auto Care (Caymans)*, 859 F. Supp. 2d 582, 586 (S.D.N.Y. 2012) ("In the Second Circuit, the class of arbitration clauses considered 'narrow,' is, functionally, a class of one.")).  A narrow arbitration clause specifies which issues or types of disputes will be arbitrated.  *See McDonnell Douglas Fin. Corp.*, 858 F.2d at 832.

the underlying agreement.[93]  *Second*, courts play a limited role when a case

involves a broad arbitration clause.[94]  Finally, when an arbitration clause is broad,

the "exclu[sion of] a substantive issue from arbitration, [ ] generally requires

specific enumeration in the arbitration clause itself of the subjects intended to be

put beyond the arbitrator's reach."[95]

      At the same time, New York courts – like the Supreme Court and

Second Circuit in the FAA context – follow "'the rule . . . that unless the

agreement to arbitrate expressly and unequivocally encompasses the subject matter

---

[93]    *See Nationwide Gen. Ins. Co. v. Investors Ins. Co. of America*, 37 N.Y.2d 91, 95 (1975) ("More typically the parties adopt a 'broad' arbitration clause agreeing generally to submit to arbitration all disputes arising out of the contract, or any dispute relating to the meaning and interpretation of the underlying agreement.").

[94]    *See id.* ("Basically the courts perform the initial screening process designed to determine in general terms whether the parties have agreed that the subject matter under dispute should be submitted to arbitration.  Once it appears that there is, or is not a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract, the court's inquiry is ended.  Penetrating definitive analysis of the scope of the agreement must be left to the arbitrators whenever the parties have broadly agreed that any dispute involving the interpretation and meaning of the agreement should be submitted to arbitration."); *Exercycle Corp. v. Maratta*, 9 N.Y.2d 329, 334 (1961) ("Once it be ascertained that the parties broadly agreed to arbitrate a dispute 'arising out of or in connection with' the agreement, it is for the arbitrators to decide what the agreement means and to enforce it according to the rules of law which they deem appropriate in the circumstances.").

[95]    *Silverman v. Benmor Coats, Inc.*, 61 N.Y.2d 299, 308 (1984).

of the particular dispute, a party cannot be compelled to forego the right to seek judicial relief and instead submit to arbitration.'"[96]  Here, a review of the Agreement shows that PFE did not agree to arbitrate the Claim.  Accordingly, section 7503(c) does not bar PFE's objection that it did not agree to arbitrate the Claim.[97]

### D.    The Arbitration Is Enjoined

Based on the undisputed facts, a hearing is not necessary to determine that plaintiffs have established each of the preliminary injunction factors.  *First*, plaintiffs are likely to succeed on the merits.  With respect to Pictet Overseas, the dispute at issue concerns the Agreement, a contract between PFE and either AFP or EMG.  Thus, Pictet Overseas can only be compelled to arbitrate if it agreed to arbitrate the Claim by virtue of its FINRA membership.

Under FINRA Rule 13200(a), arbitration is required if the dispute is

---

[96]    *Computer Assocs. Int'l., Inc. v. Com-Tech Assocs.*, 239 A.D.2d 379, 380-81 (2d Dep't 1997) (quoting *Bowmer v. Bowmer*, 50 N.Y.2d 288, 293-94 (1980)).  *Accord Gangel*, 41 N.Y.2d at 841.

[97]    *See Pitcairn*, 725 F.3d at 192.  However, PFE's objection that the agreement is not valid on grounds that it was not properly assumed by EMG, would likely be barred by section 7503(c) because it is an objection based on validity not the existence of an agreement to arbitrate.  *See, e.g.*, *Fiveco*, 11 N.Y.3d at 144-45 (holding that an untimely application under section 7503(c) was barred where it "simply attacks the present viability of the contracts containing the agreement to arbitrate").

between FINRA Members and concerns Pictet Overseas's business.  While Pictet

Overseas is a FINRA Member, none of the parties to the Agreement – PFE, AFP,

and possibly EMG – are FINRA Members.[98]  Defendants do not claim that the only

two FINRA members referred to in the Statement of Claim – Pictet Overseas and

EMG Capital – did *any* business together, much less with respect to the activities

described in the Agreement.  According to a representative from Pictet Overseas, it

has never done any business with AFP or either of the EMG defendants, and it is

not engaged in the type of business described in the Agreement.[99]  Defendants have

not offered any argument or evidence to suggest otherwise.  Accordingly, there is

no basis to conclude that Pictet Overseas agreed to be bound by FINRA's rules in

connection with any dispute with defendants.[100]

    PFE's objection is also likely to succeed on the merits.  "Faced with a

narrow arbitration clause, a court considering the appropriate range of arbitrable

issues must consider whether the [question at] issue is on its face within the

---

[98]  *See* SOC ¶¶ 7-11.

[99]  *See* Lê Decl. ¶ 9.

[100]  As explained by the Second Circuit, there are five theories "for
binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2)
assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Thomson-CSF,
S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995).  Defendants
do not advance an argument on any of these grounds.

purview of the clause."[101]  On its face, this Claim dispute does not fall within the

purview of the arbitration clause.

The Claim is not solely related to fees payable.  Rather, the SOC

asserts a claim based on PFE's alleged failure to comply with the terms of the

Agreement's termination provisions.  By its nature, this dispute concerns issues of

construction, performance, and enforcement, and under the dispute resolution

clause must be brought in Geneva and decided under Swiss law.

*Second*, defendants did not respond to plaintiffs' argument and

evidence concerning irreparable harm or the balance of hardships.  In the context

of arbitration, it is generally held that a party suffers irreparable harm when it is

"'forced to expend time and resources arbitrating an issue that is not arbitrable, and

for which any award would not be enforceable.'"[102]  A similar principle applies to

---

[101]    *New York News Inc. v. Newspaper Guild of New York*, 927 F.2d 82 (2d Cir. 1991).

[102]    *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (*per curiam*) (quoting *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997)).  *Accord UBS Sec., LLC v. Voegeli*, 405 Fed. App'x 550, 552 (2d Cir. 2011) ("Being forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law."), *affirming UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010) ("[I]t is not merely the expense that underlies the prohibition against forcing a party to arbitrate a dispute that it did not agree to arbitrate.  [Plaintiff] would also lose the right to have defendants' claims adjudicated in a court of law, rather than in an arbitral forum to whose jurisdiction it has not consented.").

the hardship prong.[103]  Here, plaintiffs – both foreign entities – did not agree to

arbitrate the Claim, and I find that these two factors are satisfied.

      Accordingly, plaintiffs have established the elements necessary for a

preliminary injunction of the FINRA arbitration.

## V.    CONCLUSION

      For the foregoing reasons, plaintiffs' motion for a preliminary

injunction is GRANTED and defendants' motion to dismiss is DENIED.  The

Clerk of Court is directed to close these motions [Docket Nos. 5 and 10].  The

parties are directed to confer and report back to the court by December 8, 2014,

indicating whether they consent to the preliminary injunction being made

permanent and to the entry of a final judgment in this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
        December 1, 2014

---

[103]   *See, e.g., Morgan Stanley & Co. v. Seghers*, No. 10 Civ. 5378, 2010
WL 3952851, at \*7 (S.D.N.Y. Oct. 8, 2010) ("The balance of hardships tips in
favor of the plaintiff in this case.  Morgan Stanley has shown that, without an
injunction, it would have to expend time and resources participating in the Texas
Arbitration because it cannot bring a motion to dismiss before the hearing.
Seghers has not identified any hardship that he will suffer from the delay of the
Texas Arbitration if he is ultimately successful in the present action.").

34

**-Appearances-**

**For Plaintiffs:**

Mark G. Hanchet, Esq.
Jeremy D. Schildcrout, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY 10019
(212) 506-3500

**For Defendants:**

Rishi Bhandari, Esq.
Evan Mandel, Esq.
Benjamin R. Delson, Esq.
Robert Glunt, Esq.
Mandel Bhandari LLP
11 Broadway, Suite 615
New York, NY 10004
(212) 269-5600